Daniel Gamez (222578)
515 S. Flower Street
18th Floor
Los Angeles, CA 90071

*An Attorney for Plaintiffs and the Proposed Classes*

*[additional counsel on signature page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| VIVIAN GRIJALVA; EVAN WENDT; JASMINE YOUNG; and ERINN SUDOL, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiffs, | |
| v. | COMPLAINT |
| KEVIN MASON, P.A.; GM LAW FIRM, LLC; KEVIN P. MASON, in his individual capacity; CHANTEL L. GRANT, in her individual capacity; NATIONAL LEGAL STAFFING SUPPORT, LLC; RELIANT ACCOUNT MANAGEMENT (RAM), LLC; RESOLVLY, LLC; GREGORY FISHMAN, in his individual capacity; JULIE QUELER, in her individual capacity; BENJAMIN ZUCKERMAN, in his individual capacity; BERGER SINGERMAN, LLP; DASZKAL BOLTON, LLP; JOHN AND JANE DOE DEFENDANTS 1-5; and XYZ BUSINESS ENTITY DEFENDANTS 1-5. | **DEMAND FOR JURY TRIAL** **REQUEST FOR CLASS ACTION CERTIFICATION UNDER F.R.C.P. 23** |
| Defendants. | |

## COMPLAINT

1.      The Plaintiffs, Vivian Grijalva, Evan Wendt, Jasmine Young, and Erinn Sudol ("Plaintiffs"), bring this action for themselves, and on behalf of all persons in the United States who have suffered financial loss at the hands of Defendants, Kevin Mason, P.A.; GM Law Firm, LLC; Kevin P. Mason, esq., individually; Chantel L. Grant, esq., individually; National Legal Staffing Support, LLC; Reliant Account Management (RAM), LLC; Resolvly, LLC; Gregory Fishman, individually; Julie Queler, individually; Benjamin Zuckerman, esq., individually; Berger Singerman, LLP; Daszkal Bolton, LLP; John and Jane Doe Defendants 1-5, and XYZ Business Entity Defendants 1-5 ("the RICO Enterprise"), and this Enterprise's: legal malpractice (gross negligence), breaches of contracts, breaches of express and implied warranties, breaches of fiduciary duties, various statutory violations (detailed below), and/or fraud, as relates to these Defendants' improperly-solicited legal services of so-called "private student loan debt resolution", and the criminal racketeering Enterprise in which the Defendants have actively participated and from which they have unlawfully profited.

2.      Plaintiffs' allegations are based upon personal knowledge as to their own acts and upon information and belief as to all other matters alleged in this Complaint, including the investigation of counsel, publicly available information, news articles, press releases, and additional analysis. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

3.      Florida attorneys, Kevin Mason, Chantel Grant, and their law firms, Kevin Mason, P.A., and GM Law Firm, LLC (the "Attorney and Law Firm Defendants"), along with their co-tortfeasors and co-conspirators, National Legal Staffing Support, LLC; Reliant Account Management (RAM), LLC; Resolvly, LLC; Gregory Fishman, individually; Julie Queler, individually; Benjamin Zuckerman, esq., individually; Berger Singerman, LLP; z Bolton, LLP; John and Jane Doe Defendants 1-5, and XYZ Business Entity Defendants 1-5 (the "presently unknown Defendants"), have committed legal malpractice (and other acts of gross negligence), or in the alternative, breaches of contract, express and implied warranties,

fraud in the inducement, fraud-in-the-factum, breaches of fiduciary duties, and other violations of common law and statutory duties owed to the Plaintiffs and the Class Members that they seek to represent, comprised of current and former clients of the Defendants' "student loan resolution" scheme and RICO Enterprise. Plaintiffs bring this proposed class action on behalf of themselves and all other persons who have suffered financial loss as a result of the attorney-negligence of the Defendants' so-called "private student loan resolution services" within the applicable statute of limitations (the "Class Period"), along with the other causes of action pleaded in this Second Amended Complaint.

4.      As detailed further, *infra*, in this Complaint, the Plaintiffs and Class Members have suffered financial damages at the hands of the Attorney-Defendants, and their co-tortfeasors and co-conspirators, National Legal Staffing Support, LLC; Reliant Account Management (RAM), LLC; Resolvly, LLC; Gregory Fishman, individually; Julie Queler, individually; Benjamin Zuckerman, esq., individually; Berger Singerman, LLP; Daszkal Bolton, LLP; John and Jane Doe Defendants 1-5, and XYZ Business Entity Defendants 1-5, and the presently unknown Defendants via the so-called "private student loan debt resolution" legal services that these Defendants, and the presently unknown Defendants, have improperly-solicited to the Plaintiffs and to the Class Members.

5.      In brief, the grossly-negligent, or fraudulent, so-called "private student loan debt resolution" legal services that the Defendants, and the presently unknown Defendants, have solicited to the Plaintiffs, and Class Members, work as follows: these Florida attorneys, through a variety of business entities, some of which, upon information and belief are incorporated in the State of Delaware, solicit (via cold calls or direct solicitations through the mail, based off of information improperly obtained by Resolvly, LLC, and then sold to the other Defendants as a part of this overall enterprise) consumers struggling with the repayment of their private student loans to enter into a so-called "private student loan debt resolution program" that the Defendants have negotiated with Sallie Mae/Navient (or other private student loan lenders). This program, upon information and belief does not, in fact

exist. However, through fraud, or gross negligence on the part of the Defendants, the Plaintiffs, and the Class Members that they seek to represent, have (purportedly and allegedly) agreed to pay, unbeknownst to them, the Defendants 50% of their total private student-loan-balance, in monthly payments, for 60 months. These payments, it is later discovered (but which was not disclosed to Plaintiffs and the Class Members), are not applied, in any way, to their student-loan-balances, and instead are fees that have been kept by the Defendants, especially Florida attorneys, Kevin Mason and his law partner, Chantel Grant. Stuart Goldberg, National Legal Staffing Support, LLC; Reliant Account Management (RAM), LLC; Resolvly, LLC; Gregory Fishman, individually; Julie Queler, individually; Benjamin Zuckerman, esq., individually; Berger Singerman, LLP; Daszkal Bolton, LLP; John and Jane Doe Defendants 1-5, and XYZ Business Entity Defendants 1-5, also profited from this (RICO) Enterprise through servicing fees, referral fees, attorney's fees, other "professional fees", or through account-management fees.

6.     Defendants' web of relationships, and the arrangements between them, funneled unjust and unearned profits and/or other illicit benefits to the Defendants through their collusive activities. Each Defendant participated in the scheme with the knowledge and collusion of the other participants, as described in greater detail in this Complaint.

7.     Throughout the Class Period, Defendants have engaged individually, and in concert with one another, in unlawful, abusive and unfair practices with respect to the attorney-client relationships formed with the Plaintiffs and Class Members. Plaintiffs assert the following claims against all Defendants (unless otherwise specified as to particular Defendants, only): (a) claims for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), as further described below; (b) claims for engaging in a conspiracy to defraud Plaintiff and the Class Members in violation of RICO 18 U.S.C. § 1962(d); (c) claims for violation of California Business & Professions Code § 17200, *et seq.*; (d) claims for attorney malpractice (gross negligence) on behalf of Plaintiff and Class Members; (e) claims for attorney malpractice (simple negligence) and negligence on the part

of all attorney Defendants in this action; (f) fraud (individual claims of the Plaintiffs only); (g) breaches of fiduciary duties on the part of the Attorney and Law Firm Defendants; (h) breaches of the duty of good faith and fair dealing on the part of all Defendants; (i) breaches of contract as to the Attorney and Law Firm Defendants; and (j) violations of the Telephone Consumer Protection Act (TCPA) as to all Defendants.

8.      Accordingly, Plaintiffs and Class Members challenge Defendants' tortious, and otherwise unlawful, conduct and they seek statutory, compensatory, punitive damages, along with an award of reasonable attorneys' fees and for reimbursement of the costs of this litigation.

## II.   PARTIES

### B.   Plaintiffs

9.      First-named Plaintiff, Vivian Grijalva, is a resident of Orange County, California. Vivian Grijalva seeks certification under Federal Rule of Civil Procedure 23 to be the Class Representative of the proposed class action class(es), defined in this Complaint, below.

10.     Second-named Plaintiff, Evan Wendt, is a citizen of the state of New York. Evan Wendt seeks certification under Federal Rule of Civil Procedure 23 to be the Class Representative of the proposed class action class(es), defined in this Complaint, below.

11.     Third-named Plaintiff, Jasmine Young, is a citizen of the state of Texas. Jasmine Young seeks certification under Federal Rule of Civil Procedure 23 to be the Class Representative of the proposed class action class(es), defined in this Complaint, below.

12.     Fourth-named Plaintiff, Erinn Sudol, is a citizen of the state of Virginia, who currently resides overseas with her husband, who was transferred overseas for work. Erinn Sudol seeks certification under Federal Rule of Civil Procedure 23 to be the Class Representative of the proposed class action class(es), defined in this Complaint, below.

### C.   Defendants

13.     First-named Defendant, Kevin Mason, P.A., is a Florida corporation that offered professional legal services to the public. This business entity has never been registered to

conduct business within California with the California Secretary of State's Office. Florida attorney, Kevin Mason, is the registered agent of Kevin Mason, P.A.

14.     Second-named Defendant, GM Law Firm, LLC, is a Florida limited liability company that offers professional legal services to the public. This business entity has never been registered to conduct business within California with the California Secretary of State's Office. This law firm is owned and operated by Florida attorneys, Kevin P. Mason and Chantel L. Grant. Chantel L. Grant, is the registered agent of GM Law Firm, LLC. It principal place of business is: 1515 South Federal Highway, Suite 105, Boca Raton, Florida 33432.

15.     Third-named Defendant, Kevin P. Mason, individually, is a Florida attorney. Kevin Mason is an owner and principal of Kevin Mason, P.A., and GM Law Firm, LLC, along with his law partner, Chantel L. Grant. Kevin Mason may be served at: 1515 South Federal Highway, Suite 105, Boca Raton, Florida 33432. Kevin Mason does not possess the licensure to practice law in the states of California, Tennessee, or Pennsylvania.

16.     Fourth-named Defendant, Chantel L. Grant, individually, is a Florida attorney. Upon information and belief, Chantel Grant is an owner and principal of Kevin Mason, P.A., and GM Law Firm, LLC, along with her law partner, Kevin P. Mason. Chantel Grant may be served at: 1515 South Federal Highway, Suite 105, Boca Raton, Florida 33432. Chantel Grant does not possess the licensure to practice law in the states of California, Tennessee, or Pennsylvania.

17.     Fifth-named Defendant, National Legal Staffing Support, LLC ("NLSS"), is a Delaware limited liability company, with its principal place of business located in the **same building** as the offices of the Attorney and Law Firm Defendants, at: 1515 South Federal Highway, Suite 113, Boca Raton, Florida 33432. NLSS, and its agents, like Joe Devito, for all purposes related to this lawsuit, acted as an agent of the Attorney and Law Firm Defendants, and as a co-conspirator and co-tortfeasor, acting in concerted action with the other Defendants, forming a RICO Enterprise, and creating the basis for joint and several liability

on the part of all Defendants in this litigation. **NLSS is not licensed with the California Secretary of State to conduct business within the state of California.**

18.     Sixth-named Defendant, Reliant Account Management (RAM), LLC ("RAM"), is a California limited liability company. RAM's registered agent with the California Secretary of State is: Registered Agent Solutions, Inc., 1220 South Street, Suite 150, Sacramento, California 95811. RAM, for all purposes related to this lawsuit, acted as an agent of the Attorney and Law Firm Defendants, and as a co-conspirator and co-tortfeasor, acting in concerted action with the other Defendants, forming a RICO Enterprise, and creating the basis for joint and several liability on the part of all Defendants in this litigation. Further, RAM acted as the payment-processor for the previous RICO Enterprise involving Gregory Fishman, Debt Be Gone, LLC/Berges Law Group.

19.     Seventh-named Defendant, Resolvly, LLC ("Resolvly"), is a Florida limited liability company, with its principal place of business located in the **same building** as the offices of the Attorney and Law Firm Defendants, at: 1515 South Federal Highway, Suite 121, Boca Raton, Florida 33432. RAM Servicing, and its agents, for all purposes related to this lawsuit, acted as an agent of the Attorney and Law Firm Defendants, and as a co-conspirator and co-tortfeasor, acting in concerted action with the other Defendants, forming a RICO Enterprise, and creating the basis for joint and several liability on the part of all Defendants in this litigation. **Resolvly is not licensed with the California Secretary of State to conduct business within the state of California.**

20.     Eighth-named Defendant, Gregory Fishman is a Florida citizen. Gregory Fishman, upon information and belief, is the leader of the RICO Enterprise described in this Complaint. Gregory Fishman is a veteran of up-front-debt-resolution scams, aided by his attorney Benjamin Zuckerman, and the Berger Singerman law firm, going back, in particular, to a similar "credit card debt resolution program" – Debt Be Gone, LLC/Berges Law Group – that was shut down by a federally-appointed Receiver.

21.    Ninth-named Defendant, Julie Queler, is a Florida citizen. Julie Queler, upon information and belief, is a primary investor, and business partner, to Gregory Fishman in this RICO Enterprise.

22.    Tenth-named Defendant, Benjamin Zuckerman, is a citizen of Florida and a member of the Florida Bar who practices law with the Berger Singerman law firm. Benjamin Zuckerman, upon information and belief, has crossed the line, repeatedly, of lawful, and ethical, representation of his clients, Gregory Fishman, Julie Queler, Resolvly, LLC, National Legal Staffing Support – and the entire RICO Enterprise, itself. Benjamin Zuckerman, an agent of the Berger Singerman law firm at all relevant times, actively assisted this RICO Enterprise, for a profit, by providing the business-law and other legal services required for this RICO Enterprise to continue to operate, gin profits, and avoid civil and criminal liability. Benjamin Zuckerman's relationship to Gregory Fishman goes back, at least, to the prior Fishman illegal "credit repair" RICO Enterprise of Debt Be Gone, LLC, for which Benjamin Zuckerman served as registered agent, along with its general counsel. Further, Benjamin Zukerman provided valuable business referrals to third-parties, like RAM, to enable the illegal profits from this RICO Enterprise to flow. A central thesis of this Complaint is that Benjamin Zuckerman, as an agent of the Berger Singerman law firm, actively participated – and still participates – in this RICO Enterprise to providing legal advice aimed at furthering the knowingly illegal activities of the RICO Enterprise. Gregory Fishman, as will be proven through discovery in this matter, would openly brag to his employees at National Legal Staffing Support, LLC/Resolvly, LLC/GM Law Firm, LLC/etc. that he was not worried about getting sued by ripped-off clients, or anyone else for that matter, because he has "the Perry Mason" (referring to Benjamin Zuckerman) of attorneys working for him.

23.    Eleventh-named Defendant, Berger Singerman, LLP, is a Florida business law firm. Berger Singerman, through its agent, Benjamin Zuckerman, acted as an active participant, and co-conspirator, of the RICO Enterprise described in this Complaint. Berger Singerman may be served via its Chairman, Mitchell Berger, esq.

24. Twelfth-named Defendant, Daszkal Bolton, LLP, is a Florida accountancy and business-advisory firm. Daszkal Bolton, like Berger Singerman, provided active, and valuable, services to what they knew was an illegal debt resolution and credit-repair racket. Daszkal Bolton may be served through its registered agent with the Florida Secretary of State.

25. John and Jane Doe Defendants 1-5, and XYZ Business Entity Defendants 1-5, are presently unidentified persons or companies who have committed legal malpractice (and other acts of gross negligence), or in the alternative, breaches of contract, express and implied warranties, fraud in the inducement, fraud-in-the-factum, breaches of fiduciary duties, and other violations of common law and statutory duties owed to the Plaintiffs and the Class Members that they seek to represent in this class action lawsuit.

## III. JURISDICTION AND VENUE

26. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. §§ 1961, 1962, and 1964.

27. This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

28. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district. These substantial events include all contact, correspondence, communications, and the like with Plaintiff, Vivian Grijalva. Further, Defendants purposefully submitted themselves to specific personal jurisdiction with this Court via their intentional and significant contacts with the forum state of California, including, but not limited to, reaching into California to solicit legal business from Vivian Grijalva, and presumably hundreds, of California citizens who are covered under the definition of the Class Members in this class action lawsuit.

29. Finally, and additionally, venue is proper in this Court – and personal jurisdiction exists over the Defendants in this matter in the state of California – based upon the residency of Defendant, RAM, as a California limited liability company. RAM is an in-state Defendant subject to general personal jurisdiction in the courts of the state of California. Also, RAM

processed all payments elicited from this RICO Enterprise. This fact satisfies both the

personal jurisdiction and venue requirements for this matter to be litigated in this forum.

## IV.   FACTUAL ALLEGATIONS

### B.   The Student Loan Resolution Scam/Legal Malpractice by Kevin Mason, Chantel Grant, Kevin Mason Law, P.A., GM Law Firm, LLC, and Stuart Goldberg, on Behalf of Plaintiff and Class Members.

30.   The Plaintiffs, like all Class Members in this class action lawsuit, have been

victims of the legal malpractice, breaches of contract and implied warranties, or, in the

alternative, fraud at the hands of Kevin Mason, Chantel Grant, Kevin Mason, P.A., GM Law

Firm, LLC, NLSS, RAM, Resolvly, Gregory Fishman, Julie Queler, Benjamin Zuckerman,

Berger Singerman, Daszkal Bolton, and the other currently unidentified attorneys and

business entities under which these attorneys have operated their so-called "private student

loan resolution" legal services (the RICO Enterprise), and that Enterprise's related scheme of

an improper client-solicitation and account-management-fee racket primarily-operated by

Gregory Fishman, Benjamin Zuckerman, NLSS, RAM Servicing, and Resolvly, on behalf of

the Defendants, and the RICO Enterprise, in general.

31.   The following are some illustrative consumer/client Complaints, taken from

publicly-available consumer-review Web sites, relating to the legal malpractice, or frauds (and

related statutory violations), committed by the Defendants against the Plaintiffs and Class

Members, as relates to the Defendants' so-called "private student loan resolution" legal

services that are at issue in this class action lawsuit (spelling and grammar mistakes remain as

found in the original)(CollegeInvestor.com, Forums, (last viewed: November 7, 2018),

http://forums.thecollegeinvestor.com/index.php?topic=367.0)

### Topic: Kevin Mason Law Firm

a. June 13, 2016 (KCoop156): Has anyone worked or heard of Kevin Mason PA out of Boca Raton Florida. They told me they could sue my private student loans for consumer compliance issues and get them dismissed or settled for a lot less. I would be responsible for 50% of what I currently owe. He is a member of the florida state bar in good standing. But i havent found much more than that. I am afraid to get into a contract with him but then it be a scam. Would love some feedback.

b. June 13, 2016 (Response from College Investor Administrator): I've never heard of them, but that doesn't mean anything. There are tons of lawyers (both good and bad), out there.

Just be very careful in working with any law firm. Make sure that you ask them exactly what steps they are going to take in fighting your debt.

A lot of people get burned dealing with law firms trying to get their student loan debt dismissed.

Make sure they don't ever:
1. Ask you to stop making payments
2. Ask you to make payments to them

Both of these are big red flags that they are NOT trying to help you.
Most people don't ever need a student loan lawyer unless you're struggling to get out of default, or you are being sued by your private lender.

If neither of these apply, all good lawyer will:
1. Validate that the debts are legitimate (which you likely know to be the case)
2. Validate that they haven't violated any debt collection laws (which you could sue them for violating)

If you're making payments and have no issues, then a lawyer isn't a good option. If you did have one of the issues above, a lawyer could help.

When working with a lawyer, I prefer fee based approach for their time, versus settlement based approach. You simply pay for the lawyers time. Most won't do it, but many legitimate ones will.

c. July 21, 2016 (Response from College Investor Administrator): We don't recommend you make payments to a law firm and not your students loans because it will harm your credit score dramatically by not making payments.

While we don't know any plan of action you put together with this firm and what your individual arrangement is, a typical scenario looks like this:
- You stop paying your lender and make the same payment to this law firm
- Your credit score is badly damaged and your lender starts moving your loan to collections
- After a long time (it can vary from months to years), this law firm attempts to settle your debts by telling the lender "see, this guy is broke and hasn't made a payment to you in years... why don't you just settle and get what money you can today".
- The lender can always say nope, we will sue and garnish his wages and collect our debt. There is no way for them to truly guarantee a 50% cut in the loan.

No matter what the end result is, we've typically always seen the person who did them (i.e. you) in worse shape than before you started. There are no guarantees, the process can take years, and meanwhile you've harmed your credit to a point where you're not going to be buying a house, car, or maybe even have trouble renting an apartment for a long time.

Plus, making 5 years of payments to them versus your lender loses a lot of progress you could have actually made on your student loan debt.

Next steps going forward? I would look at your contract with them and see how you can

cancel. I would tell them you are canceling. If you do think something is amiss, I would also encourage you to contact your state's attorney general, the Consumer Finance Protection Bureau, and even your State Bar and report the lawyer.
As for some red flags to look for based on what you wrote:
- You say this money is in an escrow account - what are the terms of the escrow agreement and is this escrow account held by a third party? That is a good indicator of whether the firm is being honest. A true escrow account will not be owned or operated by the law firm, but will be a completely third party and there will be terms about when the money can be withdrawn either to be returned to you or paid to the law firm.

- How can the law firm be late filing paperwork for you and what paperwork are they actually filing? What are you asking be done at Transunion that would require a lawyer? Whether or not its a scam, a firm that does not meet deadlines set forth in the original agreements is never one I want to work with.

d. July 25, 2016 (Final response from College Investor Administrator) If you're paying by credit card I would dispute the charge and cancel the contract with them. You run the risk they would collect, but it's probably less harm to your credit than what they propose.

Second, I would report them to the CFPB and the state attorney general. The whole thing sounds wrong, unprofessional for sure.

e. August 8, 2016 (Response from G434): Complain to Attorney General and FL Bar. I am in same boat and will not slander as I do not want to end up in defermation law suit. I am just encouraging to use proper channels to resolve this. It seems after 1 year, those who have been involved are realizing (unfortunately a bit late) that something is really wrong.

f. October 5, 2016 (Response from bgrasso): Hello everyone,

I just wanted to weigh in on my experience so far with Kevin Mason law handling my private student loans with Navient (Sallie Mae).
Last September I was contacted by Joe DeVito from National Legal Staffing Support on behalf of Kevin Mason PA to sue Navient for unlawful practices. He told me Kevin Mason had been very successful with getting student loans from Navient completely dismissed. At this point I had been paying my private student loans over $700/month for about 5 years and hadn't seen even a dent made in my principal balance (around $100k). I was desperate and Joe told me exactly what I wanted to hear, like "you can finally buy a house and start a life!", and caught me hook line and sinker. He told me to stop making payments to Navient immediately and I would start making the same monthly payments ($718/month) to the law firm but I would only make them for 5 years, versus 10 years with navient, and no interest would accrue. He told me the $ I paid them would go towards legal fees and if Navient settled for a small amount (1-2%) instead of completely dismissing my loans. He also said legal assistants would monitor my credit, as well as my father's (who co-signed my loans), to make sure Navient wasn't reporting anything negative as it is illegal for them to do so once they receive cease & desist letters from the law firm.
I honestly still can't believe I fell for any of this. A few months in I noticed they weren't doing things they said they would (like sending paperwork as another person on the forum stated). I was offered a job in NY at the beginning of this year and needed to get an apartment here. That's when I found out my credit score had gone from a 700 to a 500 and I had to pay double the amount of a deposit on an apartment just to move. I contacted my legal assistant at National Legal Staffing Support and she said there was

nothing they could do besides send dispute letters to the credit bureaus which I got no actual proof of them doing and even if they did it didn't help at all. My fathers credit also dropped and he couldn't even rent a car to help me move. No one at the law firm seemed to care or even remember I was told my credit would be monitored and this wouldn't happen.

In August I received an email from them saying Navient had sent them a settlement offer (although I never got actual proof of this offer) for $41,500. I thought it was great news since I was told the money I was paying the law firm would go towards a settlement but boy was I wrong. After pretty much having to beat a real answer out of Joe he told me I would have to pay both the settlement from Navient AND the law firm, meaning it would equal around the same amount as my original loan balance and all I did was ruin my credit. They said they would keep trying to go for complete dismissal but it seemed like all they were using for dismissal were the 3 calls Navient made to me since receiving the cease & desist from the law firm. I was given no actual proof of them doing any case work and I really believe they will just use illegal calls made for dismissal.

I started doing research on Kevin Mason and NLSS and a lot of people were saying it's a scam and to contact the Attorney General of Florida so I did. I gave them the whole story and when someone contacted me back last week they asked for more information and said they were sending my Amended Complaint to Kevin Mason but all they could really do is mediate the Amended Complaint between us. Yesterday I received a VERY angry voicemail from someone named Greg at NLSS who literally screamed at me for filing the Amended Complaint, stated they "bent over backwards for me" when I needed a 5 day payment extension ONE time, and they've "worked so hard on my case" and are going to cancel it. I'm actually terrified to call back because this person berated me so much just on a voicemail message. Has anyone else gone this far yet with them and had any sort of help from the attorney general? I have no idea what is going to happen next and I'm scared to find out.

g. October 10, 2016 (Follow up comment from bgrasso): Hi Swamileoni,

I finally was able to get Joe DeVito (not DeSilva as you stated) to send me an email on how the debt settlement would work after he called me numerous times and I kept emailing him to tell him I wanted the information in an email and not over the phone as I feel they twist their words over the phone. When I first spoke to Joe last year about signing up for the program he told me Kevin Mason would challenge the debt with Navient by using unethical practices and classes I was charged for and didn't need but now they seem to only be concerned with having the Call Log filled out and one of the legal assistants I deal with at NLSS stated the last time I spoke to him "we're going to need these calls if we want full dismissal of the loans" which made me believe they aren't doing any real work and are just going to use the 3 illegal calls Navient has made to me since receiving the cease & desist from the "law firm". I am going to email Joe this week to ask for detailed information on all the work they've done on my case so far and will withhold any future payments to NLSS until I receive the info. And no, they did not send me an actual settlement letter from Navient, just a letter typed up by Kevin Mason stating the law firm received a settlement offer from Navient for the $41,500 so I will be asking for proof of that as well.

Have you tried disputing any payments you made to the law firm? I've paid them almost $10,000 now and I'm just going to assume I probably won't be getting any of that back. And have you already reached out to the Attorney General in Florida? Someone from the Department of Agriculture contacted me back but I don't seem to be getting anywhere with them, they just keep telling me to get a lawyer, a real lawyer.

32. The following are some additional illustrative consumer/client Complaints and questions from Reddit.com relating to the legal malpractice, or frauds (and related statutory violations), committed by the Defendants against the Plaintiffs and Class Members, as relates to the Defendants' so-called "private student loan resolution" legal services that are at issue in this class action lawsuit (spelling and grammar mistakes remain as found in the original) (Reddit.com, Forums, (last viewed: November 7, 2018),

https://www.reddit.com/r/personalfinance/comments/3je2to/kevin_mason_law_office_student_loan/

## "Kevin Mason Law Office student loan consolidation/forgiveness a scam?" Reddit Comment Thread:

a.   Submitted '1 Year Ago" by pinion13: I was hoping someone could shed some light on this and I figured this sub might be the place to do it. This law office: www.kevinmasonlaw.com called offering legal assistance with basically taking action against the company servicing my private loans and promising that they could cut the loans in half through a settlement. The part that makes me feel like it is a scam is I would have to then, apparently, pay back the law office because they will "pay off" my loans. This is if I understood correctly. I got all the information from her in an email and told her I couldn't continue talking right now, but would be in touch. This almost sounds like something that could be legit, but who knows. What do you guys think, is this a scam?

b.   Response from DebtResThowaway: Here's how it works: Kevin Mason handles unsecured debt and private student loans. He does not deal with federal student loans, mortgages, etc.Kevin Mason charges 50% of the unsecured debt that you want dismissed as a retainer fee. This is of the principal amount, not the total payoff if you kept making payments (which is usually 2-3 times more). He allows you to pay this amount in monthly payments that have no financing or interest attached.
There are two outcomes. He is able to completely dismiss the debt or settle for a fraction of the amount. The dismissals occur when the creditors have violated the consumers rights (usually either through the a few different acts, FCBA is one of them). If there is more interest I'll dig up the exact ones.

For a private student loan, lets take an extreme just for the sake of discussion. Let's say you see a commercial for a trade school. It advertises that people graduating are earning 50k a year and they have a 98% placement rate of their students. You are excited and decide to enroll. You are young and don't know much about finance. They loan you 60k.

You graduate and can't get a job for a year or two. You take crap jobs in the meantime because you know now with your new skillset it is a matter of time till you are doing what you love. Except you find that job , and it pays 35k a year. You ask around , maybe contact some old school mates, they are all either not in their field of study or earning 30-40k a year.

How can a financial institution think an 18 year old who is going into a field that pays 35k a year is ever going to be able to pay back 60k?(really far more once you compute the terms)? Did the advertisement claiming 98% placement misrepresent the "product" that was financed?

This is an over simplified slam dunk scenario just to give you an idea of the possibilities when using a lawyer who specializes in consumer protection law. No lawyer can give a guarantee, it would be like you getting arrested for murder and the lawyer telling you he can guarantee you will get off.

One other thing, Kevin Mason is not a bankruptcy lawyer. This isn't because bankruptcy is inherently bad, it's just not what he specializes in. In some cases bankruptcy may be the better option for you.

c.   Response from CynFul22: Can you speak to what happens to your credit and your co-signers credit while Mr. Mason is fighting to lower your debt? Also, I received their retainer for half my debt, but what concerns me is that no where in writing does it state that the money I pay into the trust account each month for the length of my dispute will be used to settle the original debt. Does that make sense? So let's say I sign this retainer for nearly $42k, and Mr. Mason is able to get my debt lowered from the current $82k down to $50k. Where does it ever specify that I will not be responsible for the $50k AND NOW on top of that this $42k retainer. Hope that makes sense, any feedback would be appreciated.

d.   Response from MyMoronRadarFoundYou: They are only offering settlement services where they offer a settlement, and do not offer any sort of guarantee. In addition they are pushing student loan consolidation and modification as if it is only a service they can do when actually all federally insured student loans offer students an opportunity to apply for these directly with the servicer. In addition

he is slyly implying that he can handle the forgiveness of the debt, but that's through bankruptcy, which any BK attorney can do. Federally insured student loans are generally exempt from being discharged in a bankruptcy so that probably won't work

c.   Answer to question ("Did you ever move forward with them? I (G_Blaze) just got a call from them today and I kind of got that "scam" feeling.) from pinion13: No I didnt, felt to much like a scam. It felt like they would take over your debt, then try to battle it out in court to try to reduce them, and if they can't lower the debt they would more than likely charge you for their services and now they have your debt, probably at a higher interest rate. Somewhere in their contract I'm sure there is something that will completely screw you over.

33.   The following is another illustrative comment post from the Web site, Disqus.com, that shows the legal malpractice, or frauds (and related statutory violations), that the Plaintiffs and Class Members have suffered at the hands of the Defendants, and currently unidentified attorneys and business entities under which these so-called "private student loan debt resolution" legal services (the RICO Enterprise) have been marketed, and improperly-solicited, causing great financial and other harms to the Plaintiffs and Class Members: (Disqus.com, (November 7, 2018),

https://disqus.com/home/discussion/getoutofdebtguysite/this_is_how_you_can_settle_you r_navient_student_loan/, posted by "Brittany Grasso":

Also wondering what happened during/after your settlement with Kevin Mason? Since Navient offered a 55% settlement and you were only paying 50% to Kevin Mason did you have to pay the remaining 5%? Also, was your credit fixed after the lawsuit?
I was also suckered into using Kevin Mason law to lower the remaining $92k+ on my private Navient loans and now owe $46k+ to Kevin Mason and have been paying them over $700 a month for about a year now.
They never warned me that my pretty great credit score would be completely destroyed as well as my dad's, who was my co-signer. It's really stressing me out and I'm losing a lot of sleep lately. I actually missed a wedding yesterday because I tried renting a car and couldn't because of my now 498 credit score.
They keep telling me it will take up to 3 years for a resolution and there isn't a guarantee my credit will be fixed, 2 things they never mentioned in the beginning and I honestly can't imagine suffering through 2 more years of bad credit and stress like this.
I should've just kept paying Navient the $700+ a month for the next 10 years just for peace of mind I guess. I also just received letters from Navient saying my loans are now in default and will be turned

over to a collection agency..did this happen to you as well? I emailed the person I'm set up with at national legal staffing about how they can still have a suit against Navient now that my loans are now in the hands of a collection agency and they haven't gotten back to me yet.
Any advice on what I can do or what my rights are? Please help!

34.     The Affidavit of former National Legal Staffing Support Document Specialist Supervisor, Je'henna Williamson, who describes – and affirms – the allegations contained in this Complaint is attached to, and incorporated into, this Complaint as Exhibit "1". This whistleblower Affidavit was filed as [ECF Doc. No. 86] in the related matter of *Ali, et al. v. Mason, et al.*, Cause No.: 2:18-cv-1110-CBM-FFM (Central District of California).

35.     Plaintiffs were improperly-solicited, like all Class Members, via non-consented-to solicitation via cold calls to their cellular phone (through the use of automated dialing-system technology) by the Defendants, especially Resolvly, and they, the Plaintiffs, have suffered serious financial and personal harm from the legal malpractice, or, in the alternative, frauds, depicted in the above online comments that have been included in this class action lawsuit.

### First-Named Plaintiff, Vivian Grijalva

36.     A copy of the First-named Plaintiff's, Vivian Grijalva's November 16, 2015, engagement letter with Defendant, Kevin Mason, and his law firm – the precursor to the other Defendants in this matter – which establishes the attorney-client relationship that existed between Kevin Mason and Vivian Grijalva is attached to, and fully incorporated into, this Complaint as Exhibit "2".

37.     Then, on August 30, 2017, and without explanation, the Defendants (via the so-called "National Legal Staff Support") sent Vivian Grijalva a "Limited Scope Legal Services Agreement" to be entered between the Plaintiff and GM Law Firm, LLC, an entity that she had never heard of prior to that point.

38.     A copy of the first-named Plaintiff, Vivian Grijalva's, August 30, 2017, "Limited Scope Legal Services Agreement" with Defendants, Kevin Mason, Chantel Grant, and their law firm, GM Law Firm (the current attorney-front for this RICO Enterprise), is attached to, and fully incorporated into, this Complaint as Exhibit "3".

39.     It is also important to note that the form Attorney-Client Agreement, upon information and belief, prepared by Benjamin Zuckerman of the Berger Singerman law firm, is an unlawful, unconscionable, and unethical attorney-client contract. Among many other problems (which are simultaneously violation of the applicable Rules of Professional Conduct and ABA Model Rules of Professional Conduct for attorneys), this POA gives complete, final, and absolute settlement authority to Kevin Mason, P.A./Chantel Grant/GM Law Firm, and "any of its attorneys." **These same unethical and unenforceable attorney-client contractual provisions are included in each of the attorney-client retention agreements of the other three named Plaintiffs, Evan Wendt, Jasmine Young, and Erinn Sudol.**

40.     As a matter of fact, the CFPB has released at least two separate Consumer Advisory Notices specifically stating that so-called "student loan debt resolution" programs, of the nature perpetuated by the Defendants in this matter, are, in a nutshell, illegal scams.

41.     The first of these CFPB Consumer Advisory Notices, "Consumer Advisory: You don't have to pay someone to help you with your student loans," July 3, 2013, by Rohit Chopra, is attached, and incorporated into, this Complaint as Exhibit "4".

42.     The second of these CFPB Consumer Advisory Notices, "Consumer Advisory: Student debt relief companies may cost you thousands of dollars and drive you further into debt," December 11, 2014, by Rohit Chopra, is attached, and incorporated into, this Complaint as Exhibit "5".

43.     Making matters worse, at some point, and also without notice or explanation to the Plaintiffs and Class Members, Florida attorney Chantel Grant, esq., and an entity named GM Law Firm, PLLC (the "GM" stands for Mason and Grant) become the attorneys for Plaintiffs and Class Members. It is not clear why, how, or when this occurred. This is illustrative of the web of attorneys, advisors, business entities, and the like that have made this nationwide student loan debt resolution racket possible.

44.     Shockingly, Vivian Grijalva's student loan debt – held by student loan lender, Navient – had already been dismissed in a California state court collection lawsuit prior to

Vivian Grijalva being solicited by the RICO Enterprise as a part of student loan debt resolution racket. The Summons from this state court collection action – that was dismissed at trial in favor of Vivian Grijalva - is attached to, and incorporated into, this Complaint as Exhibit "6".

45.     To be clear: this Summons, Ex. 6, is dated August 11, 2010. This means that, at the time that this RICO Enterprise first solicited, via non-consensual cold call to her cellular telephone via an automated dialing system, **that Vivian Grijalva's student loan debt had already been dismissed in California state court *and* the statute of limitations to collect on that debt had run years before.** The Defendants have done nothing other than defraud Vivian Grijalva and steal thousands of dollars from her. This is the well-established pattern and practice of these Defendants and their RICO Enterprise.

46.     Further, the Defendants have materially misrepresented (either in a negligent manner or, in the alternative, through actual knowledge of the material misrepresentations, which is the more likely of these two possibilities) the attorney fees that their clients are liable to pay. The 50% of the principal balance of all student loan fee that the Defendants is represented as a 60-month, monthly payment under some sort of global-student-loan-debt-settlement-program, and **not** as an attorneys' fee. This is precisely the negligent or intentional misrepresentation that occurred with Plaintiffs and Class Members that caused Plaintiffs and Class Members to agree to the automatically-drafted monthly payments to be paid to the Defendants/the RICO Enterprise.

47.     This program of so-called "private student loan debt resolution" legal services perpetuated, and improperly-solicited, by the Defendants in this matter constitutes, among other legal claims, pleaded *infra* in this Complaint, the following causes of action, as relates to the Plaintiffs and Class Members: (1) (gross) legal malpractice; (2) negligence; (3) breaches of fiduciary duties; (4) breaches of the implied warranties of good faith and fair dealing; (5) negligent misrepresentations of material facts; (6) breaches of contract; (7) violations of the Racketeering Influenced and Corrupt Organizations Act (RICO Act), (7) claims for violation

of California Business & Professions Code § 17200, *et seq.*; (8) violations of the federal Telephone Consumer Protection Act; and (9) conversion of the Plaintiffs' and Class Members' payments made to, or processed by, these Defendants.

48.    As a sole and proximate result of the above-referenced class action causes of action pleaded against the Defendants in this Complaint (in addition to the Plaintiffs' individual common law fraud claims), Plaintiffs and Class Members have suffered severe financial damages, and other hedonic injuries, to be determined by the jury at trial. The Plaintiffs and Class Members further make demand against the Defendants for a refund of all monies paid to any of these Defendants, treble damages, statutory damages, punitive damages, attorneys' fees, pre-and-post judgment interest, statutory damages, and all other relief permitted by law and equity.

*Second-Named Plaintiff, Evan Wendt*

49.    Evan Wendt has suffered severe financial, and hedonic, harm from an identical fact-pattern as first-named Plaintiff, Vivian Grijalva, at the hands of the Defendants', and their agents', negligent and/or fraudulent conduct, as pleaded in this Complaint.

50.    Evan Wendt, upon information and belief, like the other Plaintiffs and Class Members in this class action lawsuit, had his personal financial information unlawfully solicited by Defendant, Resolvly, via its Web site, Resolvly.com (the true nature, and purpose, of the solicitation of this personal financial information was not disclosed to the Plaintiffs or Class Members), who then unlawfully sold, or otherwise provided this unlawfully-obtained information for a fee, to the Attorney and Law Firm Defendants, and their servicing-agents, NLSS and RAM Servicing, and the RICO Enterprise, in general.

51.    Evan Wendt entered into his contract for legal services (the purported, but non-existent, "student loan debt resolution program") on March 23, 2016. This attorney-client agreement also included a contract with NLSS and RAM Servicing. Evan Wendt's initial Attorney-Client Agreement with Kevin Mason/Kevin Mason, P.A./NLSS/RAM is attached to, and incorporated into, this Complaint as Exhibit "7".

52.    Suddenly, without notice, and without any explanation, the Defendants required Evan Wendt to complete a new Limited Power of Attorney Agreement with GM Law Firm. This surprise switch of the attorneys and law firms involved in this student loan debt resolution racket, is evidence by this Limited Power of Attorney form, which, itself, is attached to, and incorporated into, this Complaint as Exhibit "8".

53.    The Defendants, as a part of their negligence and/or fraud, took monthly auto draft payments of $487.22 from Evan Wendt, from March 2016 through October 2018 (when Evan Wendt placed a stop-payment order on these auto drafts, as a result of his shock and dismay after realizing that, although he has been sued, and served with a summons, by his student loan creditor in the New York state court, the Defendants are doing nothing to resolve this serious problem for him).

54.    A Narrative Synopsis, written by Evan Wendt, explaining the facts underlying his individual, and class, claim in this matter is attached to, and incorporated into, this Complaint as Exhibit "9".

55.    Finally, a transcript of a recent call between Evan Wendt and RICO Enterprise employee, Joe DeVito, is attached to, and incorporated into, this Complaint as Exhibit "10". Evan Wendt does possess an original digital recording of this telephone call.

56.    A copy of the state court collection lawsuit that has been filed against Evan Wendt, despite his representation in the so-called "student loan debt resolution" racket at issue in this lawsuit, is attached to, and incorporated into, this Complaint as Exhibit "11".

57.    It is unconscionable that Evan Wendt is being sued in state court while being represented by the Defendants in this "program."

58.    It is additionally mortifying that the Defendants hired New York counsel for Evan Wendt without his knowledge. These attorneys, hired by the Defendants, have filed pleadings, and otherwise represented Evan Wendt in the New York state court collection lawsuit, without ever speaking to Evan Wendt.

59.     Evan Wendt's RAM Payment-Processing Agreement, on behalf of this RICO Enterprise, is attached to, and incorporated into, this Complaint as Exhibit "12".

*Third-Named Plaintiff, Jasmine Young*

60.     Jasmine Young has suffered severe financial, and hedonic, harm from an identical fact-pattern as the other named-Plaintiffs at the hands of the Defendants', their RICO Enterprise, and their agents', negligent and/or fraudulent conduct, as pleaded in this Complaint.

61.     Jasmine Young, upon information and belief, like the other Plaintiffs and Class Members in this class action lawsuit, had her personal financial information unlawfully solicited by Defendant, Resolvly, via its Web site, Resolvly.com (the true nature, and purpose, of the solicitation of this personal financial information was not disclosed to the Plaintiffs or Class Members), who then unlawfully sold, or otherwise provided this unlawfully-obtained information for a fee, to the Attorney and Law Firm Defendants, and their servicing-agents, NLSS and RAM Servicing. These illegal profits are then, upon information and belief shared back with the other members of the RICO Enterprise, like Benjamin Zuckerman, Berger Singerman, and Daszkal Bolton, in the form of "professional fees."

62.     Jasmine Young entered into her contract for legal services (the purported, but non-existent, "student loan debt resolution program") on August 3, 2016. This attorney-client agreement also included a contract with NLSS and RAM Servicing. Although Kevin Mason and Kevin Mason, P.A., are listed as the attorney and law firm on this attorney-client contract, Jasmine Young has been shuffled around between attorneys and law firms – including Chantel Grant and GM Law Firm – and otherwise been harmed by the negligence and/or fraud of all Defendants in this lawsuit, who, collectively, comprise the RICO Enterprise described in this Complaint.

63.     The  initial Attorney-Client Agreement between Jasmine Young and Kevin Mason/Kevin Mason, P.A. is attached to, and incorporated into, this Complaint as Exhibit "13".

64.    The Defendants, as a part of their negligence and/or fraud, took monthly auto draft payments of $863.32 from Jasmine Young, from August 2016 to August 2018.

65.    A Payment History of the money stolen from Jasmine Young by the Defendants in this lawsuit – showing a total theft of $21,583.25 as to Jasmine Young, alone – and prepared on "GM Law Firm" letterhead is attached to, and incorporated into, this Complaint as Exhibit "14".

66.    Although Jasmine Young has not (yet) been sued by her student loan creditor(s), her credit has been ruined due, exclusively and solely, to the negligence and/or fraud committed by the Defendants, as pleaded in this lawsuit. An illustrative copy of a collection letter that Jasmine Young has received, and continues to receive, from her student loan lender(s) is attached to, and incorporated into, this Complaint as Exhibit "15".

67.    Suddenly, without notice, and without any explanation, the Defendants required Jasmine Young to complete a new Limited Power of Attorney Agreement with GM Law Firm. This surprise switch of the attorneys and law firms involved in this student loan debt resolution racket, is evidence by this Limited Power of Attorney form, which, itself, is attached to, and incorporated into, this Complaint as Exhibit "16".

*Fourth-Named Plaintiff, Erinn Sudol*

68.    Erinn Sudol has suffered severe financial, and hedonic, harm from an identical fact-pattern as the other named-Plaintiffs at the hands of the Defendants', their RICO Enterprise's, and their agents', negligent and/or fraudulent conduct, as pleaded in this Complaint.

69.    Erinn Sudol, upon information and belief, like the other Plaintiffs and Class Members in this class action lawsuit, had her personal financial information unlawfully solicited by Defendant, Resolvly, via its Web site, Resolvly.com (the true nature, and purpose, of the solicitation of this personal financial information was not disclosed to the Plaintiffs or Class Members), who then unlawfully sold, or otherwise provided this unlawfully-obtained information for a fee, to the Attorney and Law Firm Defendants, and their servicing-agents,

NLSS and RAM Servicing. These illegal profits are then, upon information and belief shared back with the other members of the RICO Enterprise, like Benjamin Zuckerman, Berger Singerman, and Daszkal Bolton, in the form of "professional fees."

70. Erinn Sudol entered into her contract for legal services (the purported, but non-existent, "student loan debt resolution program") on September 30, 2015. This attorney-client agreement also included a contract with NLSS and RAM Servicing. Although Kevin Mason and Kevin Mason, P.A., are listed as the attorney and law firm on this attorney-client contract, Erinn Sudol has been shuffled around between attorneys and law firms – including Chantel Grant and GM Law Firm – and otherwise been harmed by the negligence and/or fraud of all Defendants in this lawsuit, who, collectively, comprise the RICO Enterprise described in this Complaint.

71. Erinn Sudol's initial Attorney-Client Agreement with Kevin Mason/Kevin Mason, P.A. is attached to, and incorporated into, this Complaint as Exhibit "17".

72. The RAM Payment-Processing Agreement, executed in connection with this racket on the part of Erinn Sudol, is attached to, and incorporated into, this Complaint as Exhibit "18".

73. The Defendants, as a part of their negligence and/or fraud, took monthly auto draft payments of $401.07, plus fees, from Erinn Sudol, from September 2015 – and these payments are ongoing.

74. Although Erinn Sudol has not (yet) been sued by her student loan creditor(s), to her knowledge, her credit has been ruined due, exclusively and solely, to the negligence and/or fraud committed by the Defendants, as pleaded in this lawsuit.

///
///
///
///
///

**C.**  **Plaintiffs and Members of the Classes Suffered Harm as a Result of Defendants' Negligent, Unfair, or Improper Practices.**

75.  Defendants reaped immense profits at the expense of their clients (victims) through its "private student loan resolution" factory-farm legal malpractice, unlawful-client-referral (as to Resolvly and NLSS), and account-servicing scheme. While Defendants continued to line their pockets, their clients, like Vivian Grijalva, Evan Wendt, Jasmine Young, Erinn Sudol, and Class Members, were forced to pay for the performance of no legitimate legal services, credit-repair-services, as promised, and they were further duped into paying these monthly charges, on auto draft, by bi-weekly "follow up" emails from the National Legal Staff Support and RAM Servicing that represented to Plaintiffs and Class Members that their private student loan accounts were up-to-date, not delinquent, not reported as negative accounts on their credit reports with the major credit-reporting bureaus (Equifax, TransUnion, Experian), and that everything in the so-called "settlement program" was going fine.

76.  Class Members suffered injuries typical to those of the Plaintiffs, and these injuries are based upon common questions of fact and law in relation to the claims of Plaintiffs.

77.  A Florida Bar Ethics Bulletin, depicting one of the ethical violations under the Florida Bar rules that the Attorney and Law Firm Defendants have committed (along with violations of the duties of competence, communication, candor, and client control of the representation) against the Plaintiffs and Class Members – the charging of unreasonable attorneys' fees – is attached to, and incorporated into, this Complaint as Exhibit "19".

78.  The Program Overview provided by the Defendants to Plaintiffs – identical to the Program Overview provided to Class Members – is attached to, and incorporated into, this Complaint as Exhibit "20". Page 18 of this Program Overview, Ex. 20 to this Complaint, contains telling examples of the fraudulent misrepresentations made to prospective clients of

this racket in order to induce them to agree to the monthly RAM-payments. Page 18 of the standard Kevin Mason/NLSS Welcome Packet states:

"The costs of the service are a fixed flat fee that your attorney has allowed you to make monthly installment payments. In order to do this, your attorney utilizes a payment processing company called National Legal Staffing Support. This is the name that will show up on your monthly bank statement. This fee is all that you will have to pay. **Nothing more, nothing less.**

You can expect to be debt free with 39 to 48 months from your first payment. It could be less, but not longer. The reason being is that the litigation process may take shorter because in many cases the banks and their debt collectors settle within the first 12 months of the lawsuit. This is a good thing." *See* Exhibit "20", Program Overview, at Page (Slide) 18.

79.     The "Welcome to the Program" Packet provided by the Defendants to Plaintiffs – identical to the "Welcome to the Program" materials provided to the other Plaintiffs and Class Members – is attached to, and incorporated into, this Complaint as Exhibit "21".

80.     The Client-Intake Paperwork submitted to RAM – containing false statements, and putting RAM on notice of the involvement of known industry bad actor, Gregory Fishman – is attached to, and incorporated into, this Complaint as Exhibit "22".

81.     This RAM Client-Intake Paperwork, Ex. 22 to this Complaint, is a particularly important Exhibit. This is for several reasons. First, this Intake Paperwork put RAM on actual notice of the involvement of Gregory Fishman with NLSS, after RAM got pulled into the problems with the federally-appointed Received in the prior, similar, Debt Be Gone, LLC/Berges Law Group consumer-fraud-racket. Second, this paperwork demonstrates the active involvement of attorney, Benjamin Zuckerman, his principal, Berger Singerman, and accounting and business-advisory firm, Daszkal Bolton, in this RICO Enterprise.

## V.    TOLLING

82.     Plaintiffs and members of the Classes had no way of knowing the true nature and extent of Defendants' legal-malpractice scheme necessary to prosecute their claims. As demonstrated by the Exhibits to this Complaint, and the pleaded within it, the Defendants

were intent on hiding their behavior from their clients and regulators (like the state Bar Associations, the CFPB, and state attorneys generals offices, etc.).

83.    Defendants were under a continuous duty to disclose to Plaintiffs and members of the Classes the true character, quality, and nature of the legal representation that they were providing.

84.    Defendants knowingly and actively concealed their legal-malpractice scheme, and Plaintiffs and members of the Classes reasonably relied upon Defendants' knowing and active concealment. Plaintiffs and members of the Classes thus had no way of knowing the true character, quality and nature of the legal representation for which they have been, and continue to be, charged.

85.    Accordingly, the applicable statutes of limitations have been tolled by operation of the discovery rule and Defendants' concealment with respect to all claims pleaded in this Complaint, and Defendants are estopped from relying on any statutes of limitations in defense of this action. Further, Defendants' conduct, as directed by Gregory Fishman, Julie Queler, Benjamin Zuckerman, Kevin Mason, and Chantel Grant, was part of a continuing, systematic practice, with the last act in the legal-malpractice scheme taking place within the applicable statute of limitations. As such, the Defendants are liable for all acts undertaken as part of the scheme as continuing violations.

## VI.    CLASS ACTION ALLEGATIONS

86. Plaintiffs bring this lawsuit as a class action on behalf of themselves, individually, and all others similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

87.    The Classes, and sub-classes, that the Plaintiffs seek to certify, with them as the Class Representative(s), are defined as follows:

**Nationwide Classes (seven):** All individuals in the United States who have suffered financial loss at the hands of Defendants, Kevin Mason, P.A., GM Law Firm, LLC, Kevin P. Mason, esq., individually, Chantel L. Grant, esq.,

individually, individually, NLSS, RAM, Benjamin Zuckerman, individually, Berger Singerman, Daszkal Bolton, and Resolvly (the "Defendants"), due to those attorneys', and their law firms', and their agents': (1) legal malpractice; (2) breaches of contract; (3) breaches of fiduciary duties; (4) breaches of the duty of good faith and fair dealing), (5) violations of the Racketeering Influenced and Corrupt Organizations Act; (6) violations of the federal Credit Repair Organizations Act (15 U.S.C. § 1679); (6) violations of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227; and (7) conversion of the payments taken by the Defendants via auto draft of class members bank accounts, over the Class Period.

**California Sub-Classes of Proposed Nationwide Classes:** All residents of California who are members of one, or more, of the seven proposed nationwide classes, defined above, explicitly.

**New York Sub-Classes of Proposed Nationwide Classes:** All residents of New York who are members of one, or more, of the seven proposed nationwide classes, defined above, explicitly.

**Texas Sub-Classes of Proposed Nationwide Classes:** All residents of Texas who are members of one, or more, of the seven proposed nationwide classes, defined above, explicitly.

**Virginia Sub-Classes of Proposed Nationwide Classes:** All residents of Virginia who are members of one, or more, of the seven proposed nationwide classes, defined above, explicitly.

**First California State Law Class:** All victims of this racket who have suffered financial loss at the hands of the Defendants, or their RICO Enterprise, in violation of California Business & Professions Code § 17200, *et seq.*

**Second California State Law Class:** All victims of this racket who have suffered financial loss at the hands of the Defendants, or their RICO Enterprise, in violation of the California Credit Services Act, Cal. Civ. Code § 1789.10, *et seq.*

88. Excluded from the proposed Class and Sub-Classes are Defendants, as well as their agents, officers, and directors, and their families, as well as its parent companies, subsidiaries, and affiliates. Any judicial officer assigned to this case is also excluded. Plaintiffs reserve the right to revise the

definition of the Class and Sub-Classes based upon subsequently discovered information.

89.     This action is brought and may be properly maintained as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3).

90.     The Classes are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of proposed members of the Classes throughout the United States.

91.     Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members of the Classes.

92.     Plaintiffs' claims are typical of the claims of the Classes. As pleaded in this Complaint, Plaintiffs and members of the Classes all sustained damages arising out of the same course of negligent, or unlawful, conduct by Defendants and their RICO Enterprise.

93.     Plaintiffs are willing and prepared to serve the Classes in a representative capacity with all of the obligations and duties material to doing so. Plaintiffs will fairly and adequately protect the interests of the Classes and have no interests adverse to, or which conflict with, the interests of the other members of the Classes.

94.     Plaintiffs' interests are co-extensive with, and not antagonistic to, those of the absent members of the Classes. Plaintiffs will undertake to represent and protect the interests of the absent members of the Classes.

95.     Plaintiffs have engaged the services of the undersigned counsel. Counsel are experienced in complex litigation, especially involving student loan fraud, and they will adequately prosecute this action; and they will assert and protect the rights of, and otherwise represent, Plaintiffs and the absent members of the Classes.

96.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

97.    Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

98.    The interest of members of the Classes in individually controlling the prosecution of separate actions is theoretical, and not practical. Prosecution of the action through multiple representatives (beyond the four named-Plaintiffs) would be objectionable, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

## VII.  CLAIMS

### FIRST CLAIM

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(C) ON BEHALF OF THE NATIONWIDE CLASS AND THE SUB-CLASSES AGAINST ALL DEFENDANTS

99.    Plaintiffs hereby incorporate, by reference, the preceding paragraphs as if they were fully set forth herein.

100.    Plaintiffs, each member of the Classes, and Defendants are "persons," as that term is defined in 18 U.S.C. §§ 1961(3) and 1962(c).

### A.    Enterprise

101.    For purposes of this claim, the RICO "enterprise" is an association-in-fact, as the term is defined in 18 U.S.C. §§ 1961(4) and 1962(c), consisting of Kevin Mason, P.A.; GM Law Firm, LLC; Kevin P. Mason, esq., individually; Chantel L. Grant, esq., individually; National Legal Staffing Support, LLC; Reliant Account Management (RAM), LLC; Resolvly, LLC; Gregory Fishman, individually; Julie Queler, individually; Benjamin Zuckerman, esq., individually; Berger Singerman, LLP; Daszkal Bolton, LLP; John and Jane Doe Defendants 1-5, and XYZ Business Entity Defendants 1-5 ("the Enterprise"). The Enterprise is separate and distinct from the persons that constitute the Enterprise.

102. The Enterprise was primarily managed by Gregory Fishman, Benjamin Zuckerman, Julie Queler, Kevin Mason, Chantel Grant, and the other members, named above.

103. The companies and individuals that constitute the Enterprise were associated for the common purpose of defrauding their clients by charging them for legal services, and related account service and client-referral fees, that were not performed as a part of a "settlement agreement" with the private student loan companies that, upon information and belief, does not exist.

104. At all relevant times, the Enterprise was engaged in and its activities affected interstate commerce. The proceeds of the Enterprise were distributed to its participants.

105. The Enterprise has operated from at least January 2010 and its operation is ongoing. The Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which the participants engage.

### C. The Pattern of Racketeering Activity

106. At all relevant times, in violation of 18 U.S.C. § 1962(c), Gregory Fishman, Benjamin Zuckerman, Julie Queler, Kevin Mason, Chantel Grant, and RAM conducted the affairs of the Enterprise through a pattern of racketeering activity as defined in RICO, 18 U.S.C. § 1961(5) by virtue of the conduct described in this Complaint. Gregory Fishman, Benjamin Zuckerman, Kevin Mason, Chantel Grant, and RAM have conducted the affairs of the Enterprise and participated in the operation and management of the Enterprise, as described through this Complaint. National Legal Staffing Support, RAM Servicing, and Resolvly, are involved in this RICO Enterprise, and they are profiting from the Enterprise, but it is believed that Gregory Fishman and attorneys, Kevin Mason, Chantel Grant, and Benjamin Zuckerman are the managers of this Enterprise.

### D. The Predicate Acts of Mail and Wire Fraud

107. The pattern of racketeering activity consisted of mail and/or wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Specifically, Kevin Mason, Chantel Grant, Gregory Fishman, Benjamin Zuckerman, NLSS, RAM, and Resolvly, engaged in an intentional scheme

or artifice to defraud their clients into setting up monthly auto draft payments under the false, or negligent, premise that the Defendants would forward these monthly payments received from their clients, in trust, to their clients' private student loan creditors. This never happened. Upon information and belief, the Defendants simply pocketed these payments and otherwise converted them for their own, personal gain.

108.   The false statement and omissions, and mail and/or wire communications were made by the Defendants in furtherance of the scheme constituted predicate acts of mail and/or wire fraud.

109.   It was reasonably foreseeable to the Defendants that the mails and/or wires would be used in furtherance of the scheme, and the mails and/or wires were in fact used to further and execute the scheme.

110.   The nature and pervasiveness of the Enterprise necessarily entailed frequent wire and/or mail transmissions.  The precise dates of such transmissions cannot be alleged without access to the books and records of the Defendants. Nevertheless, Plaintiffs can allege such transmissions generally.

111.   For the purpose of furthering and executing the scheme, the Defendants regularly transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, electronic data and funds, and also regularly caused matters and things to be placed in post offices or authorized depositories, or deposited or caused to be deposited matters or things to be sent or delivered by private or commercial interstate carrier.

112.   These communications contained both affirmative misrepresentations about the nature of the charges, and were also intended to deceive Plaintiffs and class members into believing that the monthly charges assessed to their bank accounts were legitimate.

113.   These are only examples of certain instances of the pattern of racketeering activity consisting of mail and/or wire fraud violations engaged in by the Defendants. Each electronic and/or postal transmission was incident to an essential part of the scheme. As detailed above, the Defendants engaged in similar activities with respect to each member of the Classes.

114.   Each such electronic and/or postal transmission was incident to an essential part of the scheme.

115.   Additionally, each such electronic and/or postal transmission constituted a predicate act of wire and/or mail fraud in that each transmission furthered and executed the scheme to defraud the Defendant's clients.

116.   The predicate acts of mail and wire fraud constitute a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5). The predicate acts were not isolated events, but related acts aimed at the common purpose and goal of defrauding the Defendants' clients to pay, monthly, for legal services that did not exist (as a part of a "settlement program" that also does not exist) solely in order for the Defendants to reap illicit profits.

117.   All Defendants participated in the predicate acts. These activities amounted to a common course of conduct, with similar pattern and purpose, intended to deceive borrowers.

### E.   Injury to Plaintiffs and the Classes

118.   As a direct and proximate result of violations of 18 U.S.C. § 1962(c) by Defendants, Plaintiffs and the Classes have been injured in their business or property within the meaning of 18 U.S.C. § 1964(c). Plaintiffs and the Classes paid and/or were charged for unlawful, monthly auto draft charges to their bank accounts by reason, and as a direct, proximate and foreseeable result, of the scheme alleged.

119.   Plaintiffs and the Classes were also charged overdraft fees, and other amounts, after the Defendants deducted the unlawful amounts from Plaintiffs' accounts, and/or otherwise assessed charges that they were not entitled to collect.

120.   Under the provisions of 18 U.S.C. § 1964(c), all Defendants are jointly and severally liable to Plaintiffs and the Classes for three times the damages sustained, plus the costs of bringing this suit, including reasonable attorneys' fees.

## SECOND CLAIM

## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
### CAL. BUS. & PROF. CODE § 17200, ET SEQ.

121. Plaintiffs incorporate, by reference, the preceding paragraphs as if they were fully set forth herein.

122. Plaintiffs bring their § 17200 claims on behalf of themselves and the Second California State Law Class, as defined in this Complaint, above.

123. Defendants were required to adhere to the requirements of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("the UCL"), when conducting business with Plaintiff Ali and members of the Second State Law Class.

124. Further, and of great relevance, the UCL also reaches claims made by out-of-state residents harmed by unlawful conduct occurring inside California.

125. The UCL prohibits any "unlawful" business act or practice. Defendants have violated the UCL's prohibition against engaging in unlawful acts or practices by violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, and the common law torts of conversion and fraud.

126. Plaintiffs reserve the right to allege other violations of law that constitute other unlawful business acts or practices.

127. The UCL also prohibits any "unfair" business act or practice. As detailed in the preceding paragraphs, Defendants engaged in unfair business acts or practices as a central element to their "private student loan resolution" scheme.

128. Defendants systematically engaged in these unfair and unlawful business practices to the detriment of Plaintiffs and other members of the Classes.

129. The harm caused by these business practices vastly outweighs any legitimate business utility they could possibly have.

130. There were reasonably available alternatives to further Defendants' legitimate business interests other than engaging in the above-described wrongful conduct.

131.   Plaintiffs and other members of the Cal. UCL Class have been injured and have suffered a monetary loss as a result of Defendants' violations of the UCL. Plaintiffs are entitled to restitution in an amount to be determined at trial.

132.   As a result of Defendants' violations of the UCL, Plaintiffs are also entitled to recover attorneys' fees and costs to be paid by Defendants, as provided by Cal. Code of Civil Procedure § 1021.5 and other applicable law.

### THIRD CLAIM

### FRAUD (CLAIM IN THE ALTERNATIVE TO NEGLIGENCE CLAIMS)

133.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth in this Complaint.

134.   In the alternative to the Plaintiffs' negligence claims, the intentional misrepresentation of material facts related to the so-called "private student loan resolution" legal services allegedly to be provided by attorneys, Kevin Mason and Chantel Grant, and their law firms, Kevin Mason, P.A., and GM Law Firm, LLC, as well as NLSS, RAM, the RICO Enterprise, Resolvly, and currently unidentified attorneys and business entities working with these attorney and law firms (John and Jane Doe Defendants 1-5 and XYZ Business Entity Defendants 1-5), constitute separate frauds that have been committed against Plaintiffs, as detailed in this Complaint.

135.   The Defendants have committed, or actively participated in, knowing and intentional breaches of the professional and fiduciary duties that they owed to Plaintiffs, as described in this Complaint.

136.   As a result of their reasonable reliance on the Defendants' fraudulent misrepresentations, detailed in this Complaint, Plaintiffs have suffered an ascertainable loss of money, property, and other damages.

137.   As a result of Defendants' fraudulent actions, Plaintiffs are entitled to recover compensatory damages, all costs of litigation, along with punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof, along with all attorneys' fees.

## FOURTH CLAIM

## NEGLIGENCE (AS TO NON-ATTORNEY DEFENDANTS) – LEGAL MALPRACTICE (AS TO ATTORNEY AND LAW FIRM DEFENDANTS)

138.     Plaintiffs and Class Members incorporate, by reference, the facts pleaded in the preceding paragraphs of this Complaint.

139.     Attorneys, Kevin Mason, Chantel Grant, and Benjamin Zuckerman, and their law firms, Kevin Mason, P.A., GM Law Firm, LLC, and Berger Singerman, LLP, along with non-attorneys, NLSS, RAM, Daszkal Bolton, LLP, and Resolvly, and currently unidentified attorneys and business entities working with these attorney and law firms (John and Jane Does 1-5 and XYZ Business Entities 1-5) have committed breaches of the tort-based duties that they owed to Plaintiffs and Class Members, as described in this Complaint.

140.     As a result of their reasonable reliance on the Defendants' negligent omissions/negligent legal services, Plaintiffs and Class Members have suffered an ascertainable loss of money, property, and other damages (including damage to their credit reports, and, in the case of Plaintiff Wendt, and Class Members, being named as Defendants in active state court collection lawsuits brought by their student loan creditors).

141.     Plaintiffs and Class Members demand: all actual damages suffered as a result of the negligence of these Defendants; all consequential damages suffered as a result of the negligence of the Defendants; a refund of all monies paid to these Defendants, with pre-and-post judgment interest; all attorney's fees; all costs of litigation. The Defendants are joint-and severally liable – based upon their concerted action and scheme – as pleaded in this Complaint. Plaintiffs further make demand for indemnification of all judgments, and legal fees, incurred as a result of any state court collection lawsuits brought, or to be brought, against Plaintiffs by their student loan creditors.

## FIFTH CLAIM

## VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C. § 1679

142.     Plaintiffs incorporate, by reference, all of the above paragraphs of this Complaint as though they are fully stated here.

143.   The Credit Repair Organizations Act took effect on April 1, 1997.

144.   The Credit Repair Organizations Act defines a "credit repair organization" as:

[A]ny person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of . . . improving any consumer's credit record, credit history, or credit rating [.] 15 U.S.C. § 1679a(3).

145. The purposes of the Credit Repair Organizations Act, according to Congress, are:

(1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and

(2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations. 15 U.S.C. § 1679(b).

146.     The Credit Repair Organizations Act prohibits credit repair organizations from charging or receiving any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform before such service is fully performed. 15 U.S.C. § 1679b(b).

147.   The Defendants have charged Plaintiffs, and the Credit Repair Organizations Act (CROA) Class Members, money for the performance of credit repair services before such services were fully performed.

148.   The Credit Repair Organizations Act requires a written contract which meets the following requirements:

No contract referred to in subsection (a) of this section meets the requirements of this subsection unless such contract includes (in writing)—

(1) the terms and conditions of payment, including the total amount of all payments to be made by the consumer to the credit repair organization or to any other person;

(2) a full and detailed description of the services to be performed by the credit repair organization for the consumer, including—

(A) all guarantees of performance; and

(B) an estimate of—

(i) the date by which the performance of the services (to be performed by the credit repair organization or any other person) will be complete; or

(ii) the length of the period necessary to perform such services;

(3) the credit repair organization's name and principal business address; and

(4) a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right." 15 U.S.C. § 1979d(b).

149.    The terms of the contracts signed by Plaintiffs and CROA Class Members do not contain a guarantee of performance, as required by 15 U.S.C. § 1679d(b)(2)(A).

150.    The terms of the contracts signed by Plaintiffs and CROA Class Members do not give an estimate of the date by which performance of the service will be complete or the length of the period necessary to perform such services, as required by 15 U.S.C. § 1679d(b)(2)(B).

151.    The contracts given to Plaintiffs and CROA Class Members do not give the credit repair organization's principal business address, as required by 15 U.S.C. § 1679d(b)(3).

152.    The contracts given to Plaintiffs and CROA Class Members do not contain the cancellation provision, as required by 15 U.S.C. § 1679d(b)(4).

153.    The contracts given to Plaintiffs and CROA Class Members did not contain an accompanied cancellation form, in duplicate, as required by 15 U.S.C. § 1679e(b).

154.    Plaintiffs and CROA Class Members were not given fully executed contracts, signed by all of the Defendant-Attorneys, as required by 15 U.S.C. § 1679e(c)(1).

155.    As a result of the Defendants' illegal conduct, Plaintiffs and CROA Class Members have suffered emotional distress and mental anguish, as well as severe financial harm. Additionally, many of these victims, like Plaintiff Wendt, have been named as Defendants in state-court collection actions by their private student loan lenders, due to this intentional, systemic, and shocking factory-farm violations of the CROA.

156.    As a result of the Defendants' illegal conduct, Plaintiffs and CROA Class Members have stopped making payments on their other bills in reliance on the guidance and guarantees of the Defendants.

157.    As a result of the non-payment of their other bills, Plaintiffs and CROA Class Members' credit histories have been negatively impacted.

158.    As a result of the Defendants' violation of the CROA, Plaintiffs and CROA Class Members are entitled to: actual damages under 15 U.S.C. § 1679g(a)(1)(B), in the amount that they paid on their contracts, plus interest, plus any other economic damages caused by the Defendants' violations of the CROA; punitive damages under 15 U.S.C. § 1679g(a)(2)(A) and 15 U.S.C. § 1679g(b); and their reasonable attorney's fees under 15 U.S.C. § 1679g(a)(3).

## SIXTH CLAIM

## VIOLATIONS OF THE CALIFORNIA CREDIT SERVICES ACT, CAL. CIV. CODE § 1789.10, *et seq.*

159.    Plaintiffs and Class Members incorporate, by reference, the facts pleaded in the preceding paragraphs of this Complaint.

160.    Defendants, through their agents, repeatedly represented, before and after their enrollment with Defendants, that Plaintiffs and California Credit Services Act (CCSA) Class Members should immediately stop making payments on their private student loan accounts and that doing so would not negatively impact their credit rating by the close of the "private student loan debt resolution program".

161. These representations were false in that Plaintiffs and CCSA Class Members' credit ratings and reputations were made worse by following Defendant's instructions than they ever were prior to the date they were illegally and unethically solicited by the Defendants.

162. Defendants knew that these representations were false; they did not believe them to be true; and they intended to deceive and defraud the public and Plaintiffs and CCSA Class Members, in particular, into purchasing worthless services all in violation of California Civil Code §1789.13(g)(h).

163. Plaintiffs and CCSA Class Members relied on Defendants' false representations and entered into written contracts with the Defendants for "private student loan debt resolution".

164. Plaintiffs and CCSA Class Members paid Defendants thousands of dollars, respectively, on monthly auto-draft payments set up by the Defendants, without obtaining any benefit from Defendants' so-called "services".

165. Defendants knew, or should have known, that it is a violation of California law, California Civ. Code §1789.13(a) to take payment from Plaintiffs and the CCSA Class Members for promises of an improvement in their credit before providing any services.

166. Defendants knew, or should have known, that it is a violation of California law, California Civ. Code §1789.13(b) to fail to complete services within 6 months.

167. At all times herein, Defendants knew that Plaintiffs and the CCSA Class Members could be sued by their private student loan creditors when they ceased payment on these private student loans and that doing so would further destroy their credit.

168. As a direct and legal result of the above, willful, violations of the California Credit Services Act, Plaintiffs and CCSA Class Members have suffered monetary damages at an amount to be determined at trial by the finder-of-fact.

169. Additionally, as a direct and legal result of the above, willful, violations of the California Credit Services Act, the Defendants have caused Plaintiffs and CCSA Class Members to suffer harm and severe emotional distress, including mental distress, and each of them, mental suffering, mental anguish, fright, nervousness, grief, anxiety, worry,

mortification, shock, humiliation, indignity, physical pain, and other highly unpleasant mental reactions, now and into the future.

170.   Further, the conduct of Defendants was malicious, oppressive and fraudulent, and constitutes an intentional scheme to defraud Plaintiffs and the CCSA Class Members. The Defendants intended for this illegal scheme to cause injury by depriving Plaintiffs and CCSA Class Members of their money and legal rights. Moreover, Defendants carried on their scheme with a willful and conscious disregard of Plaintiffs' and the CCSA Class Members' rights. Defendants' actions constitute despicable conduct that subjected Plaintiff Ali and CCSA Class Members to cruel and unjust hardship. This repugnant conduct justifies an award of punitive damages in an amount to be proven at trial.

171.   Based upon this cause of action, the Plaintiffs and CCSA Class Members make demand for: all economic damages, plus interest; all hedonic damages; all statutory damages allowed under the California Credit Services Act; punitive damages; and reasonable attorneys' fees.

# SEVENTH CLAIM
## BREACHES OF CONTRACT

172.   Plaintiffs and Class Members incorporate, by reference, the facts pleaded in the preceding paragraphs of this Complaint.

173.   Defendants have repeatedly violated, in the many ways detailed in this Complaint, the explicit promises that they have made to Plaintiffs and the Breach of Contract Class Members, and upon which these individuals have reasonably relied, to enroll Plaintiffs and Class Members into an alleged "private student loan resolution program" (that does not exist), in which Plaintiffs and Class Members' private student loan debts would be satisfied in exchange for 60 monthly-payments made, in trust, to the Defendants, for the behalf of Plaintiffs and the Breach of Contract Class Members.

174.   Based upon this cause of action, the Plaintiffs and the Breach of Contract Class Members make demand for: all economic damages, plus interest; all hedonic damages; punitive damages (for willful breaches); and reasonable attorneys' fees.

## EIGTH CLAIM

## BREACHES OF FIDUCIARY DUTIES (AS TO ATTORNEY AND LAW FIRM DEFENDANTS ONLY)

175.   Plaintiffs and Breaches of Fiduciary Duties Class Members incorporate, by reference, the facts pleaded in the preceding paragraphs of this Complaint.

176.   Defendants have repeatedly violated, in the many ways detailed in this Complaint, the fiduciary duties that they owed, and still owe, to the Plaintiffs and the Breaches of Fiduciary Duties Class Members. Specifically, the Defendants have committed willful breaches of the fiduciary duties owed to the Plaintiffs and Class Members when they solicited their so-called "private student loan resolution program" scheme to the Plaintiffs and the Breaches of Fiduciary Duties Class Members and committed the other negligent and tortious acts, detailed in this Complaint and its incorporated Exhibits.

177.   Based upon this cause of action, the Plaintiffs and the Breaches of Fiduciary Duties Class Members make demand for: all economic damages, plus interest; all hedonic damages; punitive damages (for willful breaches); and reasonable attorneys' fees.

## NINTH CLAIM
## CONVERSION

178.   Plaintiffs and Conversion Class Members incorporate, by reference, the facts pleaded in the preceding paragraphs of this Complaint.

179.   Attorneys, Kevin Mason, Chantel Grant, Benjamin Zuckerman, and their law firms, Kevin Mason, P.A., and GM Law Firm, LLC, Berger Singerman, LLP, and NLSS, RAM Servicing, and Resolvly, and currently unidentified attorneys and business entities working with these attorney and law firms (John and Jane Does 1-5 and XYZ Business Entities 1-5) have committed the tort of conversion as to all payments made to them by the Plaintiffs and Conversion Class Members, as described in this Complaint.

180.   The Defendants have mishandled the payments they have received from their clients, like Plaintiffs and Conversion Class Members, by treating these payments as their own property, when, in fact, these payments were paid, in trust, to the attorney-Defendants, and their law firms, for the sole purpose of using these funds to pay these clients' student loan accounts.

181.   As a sole and proximate result of these wrongful acts of conversion of client-money on the part of the Defendants, Plaintiffs and Conversion Class Members have suffered an ascertainable loss of money, property, and other damages (including damage to their credit reports and being named as Defendants in state court collection lawsuits).

182.   Plaintiffs and Conversion Class Members, as a result of these wrongful acts of conversion on the part of the Defendants, demand: all actual damages suffered as a result of the acts of conversion; a refund of all client-monies converted by the Defendants, with pre-and-post judgment interest; all attorney's fees; costs of litigation; and punitive damages.

## TENTH CLAIM
## BREACHES OF THE DUTY OF GOOD FAITH AND FAIR DEALING

183.   Plaintiffs and Breaches of the Duty of Good Faith and Fair Dealing Class Members incorporate, by reference, the facts pleaded in the preceding paragraphs of this Complaint.

184.   Defendants have repeatedly violated, in the many ways detailed in this Complaint, the duties of good faith and fair dealing that they owed, and still owe, to the Plaintiffs and the Breaches of Duty of Good Faith and Fair Dealing Class Members. Specifically, the Defendants have committed willful breaches of the duty of good faith and fair dealing owed to the Plaintiffs and Class Members when they solicited their so-called "private student loan resolution program" scheme to the Plaintiffs and the Breaches of Fiduciary Duties Class Members and committed the other negligent and tortious acts, detailed in this Complaint and its incorporated Exhibits.

185.   Plaintiffs and Breaches of Duty of Good Faith and Fair Dealing Class Members, as a result of these wrongful acts on the part of the Defendants, demand: all actual damages suffered as a result of Defendants' breaches of the duty of food faith and fair dealing; a refund of all client-monies converted by the Defendants, with pre-and-post judgment interest; all attorney's fees; costs of litigation; and punitive damages.

## ELEVENTH CLAIM

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

186.   Plaintiffs and the TCPA Class Members incorporate, by reference, the facts pleaded in the preceding paragraphs of this Complaint.

187.   The Defendants, at all times material to this Complaint, utilized one, or more, automated dialing systems to initiate the unlawful (and non-consented to) cold-call solicitation telephone calls to the Plaintiffs' and TCPA Class Members' cellular telephones.

188.   The Defendants, and their RICO Enterprise, acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, and representatives in connection with the facts pleaded in this Complaint.

189.   In their efforts to unlawfully solicit legal and account-servicing business from the Plaintiffs and TCPA Class Members, Defendants used an "automatic telephone dialing system", as defined by 47 U.S.C. § 227(a)(1) to place its calls to Plaintiffs and the TCPA Class Members (a class that likely numbers in the tens of thousands of members).

190.   Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

191.   Defendants' calls were placed to telephone number assigned to cellular telephone service for which Plaintiffs and TCPA Class Members incur a charge for incoming calls under 47 U.S.C. § 227(b)(1).

192.   During all relevant times, Defendants did not possess Plaintiffs' "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).

193. As a result of the above-referenced individual and class action claims under the TCPA, Plaintiffs and TCPA Class Members demand the following: an award of $500 per unlawful call made to their cellular phones by an automated dialing system; treble damages for intentional violations of the TCPA (brining the award, per unlawful call, to $1,500); attorneys' fees; and all costs of litigation.

## VIII. PRAYER FOR RELIEF

Plaintiffs request that this Court enter a judgment against Defendants and in favor of Plaintiffs and the Rule 23 Classes, and award the following relief:

a. that this action be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as representative(s) of the Classes, and Plaintiffs' counsel as counsel for the Classes;

b. that the conduct herein be declared, adjudged and decreed to be unlawful;

c. award Plaintiffs and members of the Classes appropriate relief, including actual damages, statutory damages, treble damages, punitive damages, and restitutionary disgorgement;

d. award all costs of prosecuting the litigation, including expert fees;

e. award pre-and-post-judgment interest;

f. award attorneys' fees; and

g. grant such additional relief as this Court may deem just and proper.

///
///
///
///
///
///
///
///
///

(CLASS ACTION) COMPLAINT

## IX.   DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury as to all claims in this action.

Dated: November 9, 2018                        Respectfully submitted,


/s/ Daniel Gamez
**GAMEZ LAW FIRM, P.C.**
Daniel Gamez (222578)
Gamez Law Firm, PC
515 South Flower Street
Suite 1800
Los Angeles, CA 90071

-and-

**THE LAW OFFICE OF MACY D. HANSON, PLLC**
*/s/ Macy D. Hanson*
Macy D. Hanson
Mississippi Bar No.: 104197
(*pro hac vice* application forthcoming)
The Echelon Center
102 First Choice Drive
Madison, Mississippi 39110
Telephone: (601) 853-9521