_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02010-JLS-DFM                    Date: December 30, 2019
Title: Vivian Grijalva, et al v. Kevin Mason, P.A., et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

  Terry Guerrero                                        N/A
  Deputy Clerk                                       Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                        Not Present

PROCEEDINGS:    (IN CHAMBERS) ORDER (1) GRANTING DEFENDANT
                RAM'S MOTION TO DISMISS (Doc. 70)

        Before the Court is a Motion to Dismiss filed by Defendant Reliant Account
Management, LLC ("RAM").[1]  (Mot., Doc. 70.)  Plaintiffs[2] opposed and RAM replied.
(Opp., Doc. 76; Reply, Doc. 79.)  Having reviewed RAM's Motion and the Second
Amended Complaint ("SAC," Doc. 69), the Court GRANTS the Motion and DISMISSES
the claims brought against RAM.[3]

## I.    BACKGROUND

        In this action, Plaintiff Vivian Grijalva claims that she is a victim of a scheme by
which Defendants allegedly conspired to target individuals "struggling with making
timely payments on their student loan accounts" and defraud them out of tens of
thousands of dollars with promises of a "purported, but non-existent, 'student loan debt

_____

[1] There are currently four motions to dismiss and strike filed by the Defendants in this action.
(Docs. 70-73.)  The Court addresses RAM's Motion to Dismiss (Doc. 70) in this Order and
VACATES the hearing set for January 24, 2020, at 10:30 a.m.  The January 24, 2020 hearings on
the other pending motions (Docs. 71-73) remain on calendar.
[2] In a concurrently-issued order, the Court severs all but the first named plaintiff from the action.
Hence, this Order pertains only to the single, remaining plaintiff, Vivian Grijalva.
[3] The Court finds this matter appropriate for disposition without oral argument.  Fed. R. Civ. P.
78(b); C.D. Cal. L.R. 7-15.

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02010-JLS-DFM                    Date: December 30, 2019
Title: Vivian Grijalva, et al v. Kevin Mason, P.A., et al

resolution program.'"  (SAC ¶¶ 5-11, 65-85.)  Grijalva alleges the named Defendants are
interrelated and operate within an opaque "web of business relationships" as follows.  (*Id.*
¶¶ 4-11.)  Defendant Resolvly, LLC, "a shell … company controlled by [Defendants]
Gregory Fishman and Julie Queler," obtains "sales-leads of consumers who have large
student loan balances."  (*Id.* ¶ 5.)  Then, employees of Defendant National Legal Staffing
Support, LLC ("NLSS")[4], "another shell limited liability company controlled by
[Defendants] Gregory Fishman and Julie Queler, cold-call[] the consumers listed on these
sales-leads to solicit customers for the "'student loan debt resolution program.'"  (*Id.* ¶ 6.)
In so soliciting, these employees "represent … that they work for attorneys, Kevin Mason
and/or Chantel Grant and/or GM Law Firm, and that they offer a debt resolution program
that is guaranteed to eliminate all the consumer's student loan (and/or other consumer)
debt for fifty cents on the dollar," which is paid via a monthly payment plan.  (*Id.* ¶¶ 6,
9.)  The SAC alleges that Kevin Mason, Kevin Mason, P.A., Chantel Grant, and the GM
Law Firm are active participants in the scheme and knowingly "provide the cover of
legitimacy for the illegal" operation.  (*See, e.g., id.* ¶¶ 8, 59, 67, 73-75.)  According to the
SAC, each of these eight Defendants is Florida based.  Fishman and Queler are Florida
citizens (*id.* ¶¶ 31-32), Kevin Mason and Chantel Grant are "Florida attorney[s]" (*id.*, ¶¶
26-27), and Kevin Mason, P.A., GM Law Firm, LLC, NLSS, and Resolvly, LLC are
business entities that are either incorporated or have their principal place of business in
Florida (*id.* ¶¶ 24-25, 28, 30).

        The ninth and final Defendant involved in the alleged scheme is RAM.  RAM is a
limited liability company incorporated in California and with its principal place of
business in Orange County.  (*Id.* ¶ 29.)  RAM is in the business of payment processing
and while the SAC mentions the company many times, the allegations against it boil
down to "RAM [acted] as the sole and exclusive payment processor" for the scheme.
(*See, e.g., id.* ¶¶ 9, 29.)

        In the SAC, Grijalva brings five claims for relief: (1) civil violation of the
Racketeer and Influenced Corrupt Organizations Practices Act ("RICO"); (2) violations
of the Telemarketing and Consumer Fraud and Abuse Prevention Act ("TCFAPA") and

_____

[4] Plaintiff alleges that all employees of Fishman, Queler, and their shell companies work out of
the same "boiler room" office located at 1515 Federal Highway, Boca Raton, Florida.

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02010-JLS-DFM                              Date: December 30, 2019
Title: Vivian Grijalva, et al v. Kevin Mason, P.A., et al

Telemarketing Sales Rules; (3) fraud; (4) legal malpractice; and (5) breaches of the duty
of good faith and fair dealing.[5]  (*See* SAC ¶¶ 209-60.)

## II.    LEGAL STANDARD

    "Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint
for 'failure to state a claim upon which relief can be granted.'  Dismissal of a complaint
can be based on either a lack of a cognizable legal theory or the absence of sufficient
facts alleged under a cognizable legal theory."  *Alfred v. Walt Disney Co.*, 388 F. Supp.
3d 1174, 1180 (C.D. Cal. 2019) (citation omitted) (quoting Fed R. Civ. P. 12(b)(6)).  In
deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-
pleaded factual allegations" in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).
Courts must also draw all reasonable inferences in the light most favorable to the non-
moving party.  See *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).
Yet, "courts 'are not bound to accept as true a legal conclusion couched as a factual
allegation.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan
v. Allain*, 478 U.S. 265, 286 (1986)).

    "To survive a motion to dismiss, a complaint must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*,
556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678
(citing *Twombly*, 550 U.S. at 556).  A plaintiff must not merely allege conduct that is
conceivable.  When "a complaint pleads facts that are merely consistent with a
defendant's liability," it stops short of the line between possibility and plausibility of
entitlement to relief."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

    Finally, the Court may not dismiss a complaint without leave to amend unless "it
is absolutely clear that the deficiencies of the complaint could not be cured by

_____

[5] The first, second, and fifth claims are asserted against all Defendants.  The third claim, for
fraud, is asserted against Kevin Mason, Kevin Mason, P.A., Chantel Grant, GM Law Firm, LLC,
and National Legal Staffing Support, LLC.  The fourth claim, for legal malpractice, is brought
against only Kevin Mason, Kevin Mason, P.A., Chantel Grant, and GM Law Firm, LLC.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02010-JLS-DFM                    Date: December 30, 2019
Title: Vivian Grijalva, et al v. Kevin Mason, P.A., et al

amendment." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.
1988) (internal quotation marks and citations omitted); *see also Lopez v. Smith*, 203 F.3d
1122, 1130 (9th Cir. 2000) (en banc) (district court should grant leave to amend "unless it
determines that the pleading could not possibly be cured by the allegation of other facts")
(internal quotation marks and citations omitted).

## III.    DISCUSSION

The Court concludes that the SAC fails, in each instance, to state a claim against
RAM.  The relevant claims are addressed in turn below.

### A.  Civil Violation of RICO Act (18 U.S.C. § 1962(c))

"To maintain a civil RICO claim [under 18 U.S.C. § 1962(c)], a plaintiff must
allege that the defendant engaged in: (1) conduct (2) of an enterprise (3) through a pattern
(4) of racketeering activity and, additionally, must establish that (5) the defendant caused
injury to plaintiff's business or property."  *Black v. Corvel Enterprise Comp Inc.*, 756
Fed. Appx. 706, 708 (citing *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th
Cir. 2002)).  RAM contends that the SAC provides only conclusory allegations that RAM
assisted in the alleged scheme by acting as a payment processor.  (Mot. at 8.)  As RAM
puts it, there are no allegations that RAM substantively participated in or had any
knowledge of the alleged pattern of racketeering activity.  (*Id.*)  In response, Grijalva
argues that because all of the monetary losses at issue in this litigation were funneled
through RAM as payment processor, it is "most directly responsible" for her losses.
(Opp. at 4.)  She further asserts that the SAC adequately pleads an associated-in-fact
RICO enterprise and that liability follows from the allegation that RAM "agree[d] with a
Defendant who [was] an operator or manager to conduct the affairs of the Enterprise
through a pattern of racketeering activity."  (*Id.* at 7.)  RAM has the better argument.

The Supreme Court has held that "it is clear that Congress did not intend to extend
RICO liability under § 1962(c) beyond those who participate in the operation, [direction,]
or management of an enterprise through a pattern of racketeering activity."  *Reves v.
Ernst & Young*, 507 U.S. 170, 184 (1993).  This limitation on the types of conduct that

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02010-JLS-DFM                    Date: December 30, 2019
Title: Vivian Grijalva, et al v. Kevin Mason, P.A., et al

satisfy the first element of a RICO claim constituted the Supreme Court's rejection of the
idea that "almost any involvement would do." *Walter v. Drayson*, 538 F.3d 1244, 1247
(9th Cir. 2008). In *Walter*, the Ninth Circuit addressed the type of associated-in-fact
enterprise Grijalva relies on and stated that § "1962 (c)'s conduct requirement applies
without regard to the nature of the enterprise." 538 F.3d at 1249. In keeping with *Reves*,
the court held that for an actor to bear liability for an alleged RICO enterprise's conduct,
they must have "some part in directing its affairs." *Id.* "Simply performing services for
the enterprise does not rise to the [requisite] level of direction." *Id.*; *see also Baumer v.
Pachl*, 8 F.3d 1341, 1343-45 (9th Cir. 1993).

The SAC is devoid of allegations suggesting that RAM in any way directed the
affairs of the alleged enterprise or did anything more than perform services for it. The
only factual allegation pertaining to RAM's conduct is the assertion that RAM acted as
"the sole and exclusive payment processor," accepting the monthly payments and
remitting them to the other Defendants, for a fee. (*See, e.g.*, SAC ¶¶ 126, 136, 146.)
Without more, Grijalva's argument that RAM "agree[d] with a Defendant who [was] an
operator or manager" is of no moment. *See Baumer*, 8 F.3d at 1344 (finding that
provision of legal services to alleged RICO enterprise did not create liability); *Walter*,
538 F.3d at 1249 (same after noting that "[o]ne can be part of an enterprise without
having a role in its management and operation").

Further, from the SAC it is apparent that Grijalva entered into a Payment-
Processing Agreement with RAM authorizing the "monthly-draft payments" and
demonstrating that RAM is only remotely connected to the alleged RICO enterprise.
(SAC ¶ 100.) This Automated Clearing House ("ACH") agreement conspicuously states
that RAM is "in the business of [and receives up-front fees for] processing payments,"
provides specific services to NLSS "as an independent third party," and "RAM is not an
owner, employee, or partner" of NLSS. (RAM Processing Agreement at 1, SAC Ex. 12,
Doc. 60-12[6].) Grijalva asserts that RAM "kn[e]w, or should have known" that the "debt
resolution program" at issue here was illegal. (Opp. at 4.) However, there is nothing in

_____

[6] The ACH agreement in Exhibit 12 to the SAC was entered into by another Plaintiff in this
litigation, Evan Wendt. (*See* SAC Ex. 12.) Wendt has been severed from this action. However,
the SAC indicates that Grijalva entered into the exact same ACH agreement with RAM. (SAC ¶
100.)

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02010-JLS-DFM                     Date: December 30, 2019
Title: Vivian Grijalva, et al v. Kevin Mason, P.A., et al

the SAC to support this argument, and Grijalva fails to explain how—absent the type of
requisite conduct described above—even this knowledge would create liability.

There is simply nothing in or attached to the SAC to suggest that RAM
participated in the operation, direction, or management of the alleged RICO enterprise.
For that reason, it fails to state a claim under 18 U.S.C. § 1962(c).

### B.  Violations of TCFAPA (15 U.S.C. §§ 6101-08) and
### Telemarketing Sales Rules (16 C.F.R. § 310 *et seq.*)

A claim may be brought pursuant to the TCFAPA (15 U.S.C. §§ 6101-08) by "any
person adversely affected by any pattern or practice of telemarketing which violates any
rule of the Commission under [15 U.S.C. § 6102]."  15 U.S.C. § 6104.  The rules
referenced by § 6104 are the Telemarketing Sales Rules ("TSRs") promulgated by the
Federal Trade Commission ("FTC") in 16 C.F.R. § 310 *et seq.*  16 C.F.R. §§ 310.3-.4
proscribe a wide array of deceptive and abusive telemarketing practices.  Grijalva alleges
that Defendants repeatedly violated "16 C.F.R. § 310.4(a)(5)(i)'s prohibition on the
collection of payment of advanced-fees for telemarketed 'debt relief services' prior to the
underlying consumer debts having either been settled or renegotiated."  (SAC ¶ 228.)
And RAM specifically is liable for these acts under 16 C.F.R. § 310.3(b) because "as the
sole and exclusive payment processor" for the alleged RICO enterprise, it provided
"substantial assistance or support to [a] seller or telemarketer" while either knowing or
consciously avoiding the knowledge that the TSRs were being violated.  (Opp. at 8.)
Ram contends that the SAC's allegations draw too tenuous a connection between it and
the alleged TSR violations.  (*See* Mot. at 10.)

The TSR's substantial assistance standard set forth in 16 C.F.R. §§ 310.3(b) "is
not met where a party provides only casual or incidental help."  *F.T.C. v. Lake*, 181 F.
Supp. 2d 692, 699-701 (C.D. Cal. 2016). "[C]leaning a telemarketer's office, delivering
lunches to the telemarketer's premises, or engaging in some other activity with little or no
relation to the conduct that violates the Rule would not be enough to support liability as
an assistor or facilitator."  *F.T.C. v. Chapman*, 714 F.3d 1211, 1216 (10th Cir. 2013)
(citing *FTC, Complying with the Telemarketing Sales Rule,* available at
http://business.ftc.gov/documents/bus27–complying–telemarketing–sales–rule).  And the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02010-JLS-DFM                    Date: December 30, 2019
Title: Vivian Grijalva, et al v. Kevin Mason, P.A., et al

FTC has previously provided, as non-exclusive examples, types of conduct that would constitute substantial assistance. Telemarketing Sales Rule, 60 Fed. Reg. 43,842, 43,852 (Aug. 23, 1995). This type of conduct includes providing a seller or telemarketer with contact lists identifying individuals with poor credit histories, call scripts or advertising materials, and knowingly incorrect appraisals of good and services to reference while engaging in telemarketing. *Id.* Courts have also found that substantial assistance is provided in this context when one defendant "formulated, directed, controlled, … or participated in the unlawful telemarketing acts and practices" of other, more directly liable defendants. *F.T.C. v. Jones*, No. SA CV 17-0058-DOC (JCGx), 2017 WL 11198503, at *3 (C.D. Cal. May 25, 2017); *see also F.T.C. v. Universal Premium Services, Inc.*, No. CV 06-0849 SJO (OPx), 2006 WL 8442134, at *7-*8 (C.D. Cal. Mar. 14, 2006).

Grijalva's TCFAPA claim against RAM fails for reasons similar to those that undermine her RICO claim. Both the SAC and Grijalva's opposition to RAM's Motion are permeated with conclusory allegations that RAM "substantially assisted" the TSR-violative RICO enterprise. (*Id.*; SAC ¶¶ 48, 230, 259.) But there are no allegations that RAM did anything other than act "as the sole and exclusive payment processor" for the other Defendants. (*See* SAC.) The Court concludes that in merely acting as a payment processor and accepting, for a fee, monthly payments before remitting them to the other Defendants, RAM has not substantially assisted in violations of the TSRs. Accordingly, the SAC fails to state a claim against RAM under 15 U.S.C. § 6104 and 16 C.F.R. § 310.3(b).

## C. Breach of the Duty of Good Faith and Fair Dealing

Grijalva explicitly states that her fifth claim is brought against RAM for "willful breaches of the duty of good faith and fair dealing owed to her when it, unlawfully, provided substantial assistance to the other Defendants' illegal, advanced-fees, 'student loan debt resolution program' telemarketing scheme." (SAC ¶ 259.) As an initial matter, the Court found above that RAM's minimal involvement as payment processor cannot be characterized as "substantial assistance" in the commission of telemarketing violations.

---

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02010-JLS-DFM                    Date: December 30, 2019
Title: Vivian Grijalva, et al v. Kevin Mason, P.A., et al

Thus, allegations that RAM breached a duty of good faith and fair dealing in so substantially assisting are insufficient to support this claim.

"It is well settled that, in California, the law implies in every contract a covenant of good faith and fair dealing." *Freeman & Mills, Inc. v. Belcher Oil Co.*, 44 Cal. Rptr. 2d 420, 423 (1995). "Broadly stated, that covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." *Id.* And "[g]enerally, no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a "special relationship" with "fiduciary characteristics." *Pension Tr. Fund for Operating Engineers v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) (quoting *Mitsui Mfrs. Bank v. Superior Court*, 212 Cal. App. 3d 726, 730 (1989)). "Thus, the implied covenant tort is not available to parties of an ordinary commercial transaction where the parties deal at arms' length." *Id.*

The crux of the SAC is the non-existence of a purported "student loan debt resolution program" from which Grijalva expected to receive assistance after entering into a "contract for legal services." (*See,* SAC ¶¶ 78-85.) However, the only contractual connection between Grijalva and RAM is the ACH agreement whereby RAM was authorized to "collect and deposit payments customer has [separately] agreed" to make for legal services. (*See, e.g.,* SAC Ex. 12.) Grijalva argues that this ACH agreement is "sufficient to form the basis of the [her] breach of the duty of good faith and fair dealing claims in this action." (Opp. at 9.) But she does not explain how any alleged act by RAM deprived her of the benefits bargained for in the ACH agreement. The agreement stands apart from the legal services agreement and the SAC makes no allegation that RAM failed to process payments as promised. Further, the agreement strikes as an ordinary commercial transaction between a consumer and an incidental service provider, rather than one where the parties stand in a "special relationship" and RAM has taken on fiduciary responsibilities.

As such, the SAC is unable to state a claim against RAM for breaches of the duty of good faith and fair dealing based on the existence of the ACH agreements.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS RAM's Motion in its entirety and

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02010-JLS-DFM                    Date: December 30, 2019
Title: Vivian Grijalva, et al v. Kevin Mason, P.A., et al

DISMISSES WITHOUT PREJUDICE Grijalva's claims against RAM.  While
amendment may be futile, the Court nonetheless GRANTS Grijalva leave to amend her
pleading.  Any amendment must be consistent with Rule 11 obligations and address only
the deficiencies identified in this Order.  If Grijalva elects to file an amended pleading, it
shall be filed within **twenty-one (21) days** from the date of this Order.

Initials of Preparer:  tg