Macy D. Hanson
Admitted *Pro Hac Vice*
**The Law Office of Macy D. Hanson, PLLC**
102 First Choice Drive
Madison, MS 39110
Miss. Bar No. 104197
Telephone: 601-853-9521

*An Attorney for the Plaintiff*

*[additional counsel on signature page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

VIVIAN GRIJALVA

Plaintiff,

v.

KEVIN MASON, P.A.; GM LAW
FIRM, LLC; KEVIN P. MASON, in his
individual capacity; CHANTEL L.
GRANT, in her individual capacity;
NATIONAL LEGAL STAFFING
SUPPORT, LLC; RESOLVLY, LLC;
GREGORY FISHMAN, in his individual
capacity; JULIE QUELER, in her
individual capacity; JOHN AND JANE
DOE DEFENDANTS 1-5; and XYZ
BUSINESS ENTITY DEFENDANTS
1-5.

Defendants.

**Case No. 8:18-02010-JLS-DFM**

<u>THIRD AMENDED COMPLAINT</u>

**DEMAND FOR JURY TRIAL**

## THIRD AMENDED COMPLAINT

1.     The Plaintiff, Vivian Grijalva ("Plaintiff"), brings this action to recover damages caused by the Defendants, Kevin Mason, P.A.; GM Law Firm, LLC; Kevin P. Mason, esq., individually; Chantel L. Grant, esq., individually; National Legal Staffing Support, LLC; Resolvly, LLC; Gregory Fishman, individually; Julie Queler, individually; John and Jane Doe Defendants 1-5, and XYZ Business Entity Defendants 1-5 ("the Defendants").

## I.     NATURE OF THE ACTION

2.     This is a consumer case about the Defendants' illegal, and deceptive, nationwide, advanced-fee, "student loan debt resolution" scam that leaves vulnerable debtors, like Vivian Grijalva, tens of thousands of dollars poorer, with their credit destroyed, and often leaves them, or family co-signors, as Defendants in state court collection lawsuits brought forward by their creditors on these essentially non-dischargeable debts. The scam at issue in this lawsuit ruins its victim's financial lives and causes them severe financial, emotional, hedonic, reputational, and psychological damage.

3.     The Defendants, through their web of business relationships, engage in illegal cold-call-telemarketing to solicit consumers struggling with their private student loan debt (or other consumer debts) to enroll in the Defendants' student loan (or consumer loan) "debt resolution program" – which turns out to be nothing more than the Defendants' Enterprise's illegal collection of up-front fees for the performance of little, if any, legitimate legal/debt resolution services.

4.     In brief, the "student loan debt resolution" racket at issue in this lawsuit works as follows: Resolvly, LLC, a shell limited liability company controlled by Gregory Fishman and Julie Queler, purchases, or otherwise obtains under false pretenses, sales-leads of consumers who have large student loan balances. The Defendants particularly focus their marketing efforts on consumers who are struggling with making timely payments on their student loan accounts, focusing on private student loans.

5.      National Legal Staffing Support, LLC ("NLSS"), another shell limited liability company controlled by Gregory Fishman and Julie Queler, cold-calls the consumers listed on these sales-leads to solicit customers for the "student loan debt resolution program" at issue in this lawsuit. The sales staff of this racket, employees of Gregory Fishman and Julie Queler's shell companies – who all work in the same "boiler room" office at 1515 Federal Highway, Boca Raton, Florida – represent to the recipients of these cold-calls that they work for attorneys, Kevin Mason and/or Chantel Grant and/or GM Law Firm, and that they offer a debt resolution program that is guaranteed to eliminate all the consumer's student loan (and/or other consumer) debt for fifty cents on the dollar. After completing the Kevin Mason/Chantel Grant/GM Law Firm/NLSS payment-plan of half of the amount of the consumers' total loan balance(s) – paid, up-front, in 60 equal monthly payments – the consumers' creditors will purportedly eliminate the outstanding debts without any negative impacts on the consumers' credit reports.

6.      This telemarketing sales pitch, it tuns out, it a lie and a fraud. These up-front fees are stolen, and split amongst the Defendants, while no debt relief services of any value to the clients, like Vivian Grijalva, are performed.

7.      The attorney-marketing-fronts, Florida attorneys, Kevin Mason and Chantel Grant and their associates at GM Law Firm, formerly Kevin P. Mason, P.A., provide the cover of legitimacy for the illegal "debt resolution" programs that the Defendants operate. The use of attorney-marketing-fronts, like Kevin Mason and Chantel Grant, to provide an aire of legitimacy to this "debt resolution program" is essential to the racket's success in enrolling new clients (victims). This is precisely what happened with Vivian Grijalva.

8.      Further, and although the written marketing materials and oral representations made during the Defendants' telemarketing cold-calls all purport that NLSS is the law firms' "payment processor" for the monthly "debt settlement program plan payments" stolen by this racket, the real payment processor involved in collecting these monthly "plan" payments

is a California payment-processing company called Reliant Account Management (RAM), LLC. This is precisely what happened with Vivian Grijalva.

9.     All (illegal, up-front) payments for this telemarketing "debt resolution service" – the life blood of this Enterprise and the source of all of its ill-gotten funds – are wired through the accounts of Orange County, California-based, RAM, and then remitted from RAM's accounts to the other members of this Enterprise in proportions that are not currently known to Plaintiff.

10.    Defendants' web of relationships, and the arrangements between them, funneled unjust and unearned profits and/or other illicit benefits, stolen from Vivian Grijalva, to the Defendants through their collusive activities. Each Defendant participated in the scheme with the knowledge and collusion of the other participants, as described in greater detail in this Third Amended Complaint.

## II.   PARTIES

### A    Plaintiff

11.    First-named Plaintiff, Vivian Grijalva, is a resident of Orange County, California.

### B.    Defendants

12.    First-named Defendant, Kevin Mason, P.A., is a Florida corporation that purported to offer professional legal services to the public. Florida attorney, Kevin Mason, is the registered agent of Kevin Mason, P.A. Kevin Mason, P.A., may be served via its counsel-of-record in this matter.

13.    Second-named Defendant, GM Law Firm, LLC, is a Florida limited liability company that purports to offer professional legal services to the public. This law firm is owned and operated by Florida attorneys, Kevin P. Mason and Chantel L. Grant, upon information and belief  - although its activities are controlled by Gregory Fishman and Julie Queler. Chantel L. Grant, is the registered agent of GM Law Firm, LLC. It principal place of business is: 1515 South Federal Highway, Suite 105, Boca Raton, Florida 33432. GM Law Firm may be served via its counsel-of-record in this matter.

14.     Third-named Defendant, Kevin P. Mason, individually, is a Florida attorney. Kevin Mason is an owner and principal of Kevin Mason, P.A., and GM Law Firm, LLC, along with his law partner, Chantel L. Grant. Kevin Mason may be served via his counsel-of-record in this matter. Kevin Mason does not possess the licensure to practice law in any state other than Florida.

15.     Fourth-named Defendant, Chantel L. Grant, individually, is a Florida attorney. Upon information and belief, Chantel Grant is an owner and principal of GM Law Firm, along with her law partner, Kevin P. Mason. Chantel Grant may be served via her counsel-of-record in this matter.. Chantel Grant does not possess the licensure to practice law in any state other than Florida.

16.     Fifth-named Defendant, National Legal Staffing Support, LLC ("NLSS"), is a Delaware limited liability company, with its principal place of business located in the **same building** as the offices of the Attorney and Law Firm Defendants, at: 1515 South Federal Highway, Suite 113, Boca Raton, Florida 33432. NLSS, and its agents, John and Jane Doe Defendants 1-5, acted as agents and as co-conspirators and co-tortfeasors, acting in concerted action with the other Defendants, forming a RICO Enterprise, and creating the basis for joint and several liability on the part of all Defendants in this litigation.

17.     Sixth-named Defendant, Resolvly, LLC ("Resolvly"), is a Florida limited liability company, with its principal place of business located in the **same building** as NLSS, GM Law Firm, and the former Kevin Mason, P.A., at: 1515 South Federal Highway, Boca Raton, Florida 33432. Resolvly, and its agents, John and Jane Does 1-5, act as agents and as a co-conspirators and co-tortfeasors, acting in concerted action with the other Defendants, forming a RICO Enterprise, and creating the basis for joint and several liability on the part of all Defendants in this litigation.

18.     Seventh-named Defendant, Gregory Fishman is a Florida citizen. Gregory Fishman, upon information and belief, is the leader of the RICO Enterprise described in this Third Amended Complaint. Gregory Fishman is a veteran of up-front-debt-resolution scams,

going back, in particular, to a similar "credit card debt resolution program" – Debt Be Gone, LLC/Berges Law Group – that was shut down by a federally-appointed Receiver.

19.     Eighth-named Defendant, Julie Queler, is a Florida citizen. Julie Queler, upon information and belief, is a primary investor, and business partner, to Gregory Fishman in this RICO Enterprise. Julie Queler is involved in the day-to-day management of this Enterprise.

20.     John and Jane Doe Defendants 1-5, and XYZ Business Entity Defendants 1-5, are presently unidentified persons or companies who have participated with Defendants in this "student loan debt resolution" scheme and who have committed legal malpractice (and other acts of gross negligence), or in the alternative, breaches of contract, express and implied warranties, fraud in the inducement, fraud-in-the-factum, breaches of fiduciary duties, and other violations of common law and statutory duties owed to the Plaintiff in connection with the "student loan debt resolution" scheme that is at issue in this lawsuit, and for which the Plaintiff, Vivian Grijalva, has suffered severe damages.

## III.   JURISDICTION AND VENUE

21.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §§ 6101-6108, among the violations of other federal statutes pleaded in this Third Amended Complaint.

22.     This Court also has supplemental jurisdiction over Plaintiff's state common law claims pursuant to 28 U.S.C. § 1367.

23.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district. These substantial events include all contact, correspondence, auto-draft payments, communications, and the like with Plaintiff and California (Orange County) citizen, Vivian Grijalva. Further, Defendants purposefully submitted themselves to specific personal jurisdiction with this Court via their intentional and significant contacts with the forum state of California, including, but not limited to, reaching into California to solicit legal "debt relief" business from Vivian Grijalva.

## IV.   FACTUAL ALLEGATIONS

### A.   The Consumer Fraud Abuse and Prevention Act ("the Telemarketing Act") and the FTC's Telemarketing Sales Rules.

24.    Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices under the Telemarketing Act, 15 U.S.C. §§ 6101-6108. The FTC adopted the original Telemarketing Sales Rules ("TSR") in 1995, extensively amended it in 2003, and amending certain provisions thereafter. 16 C.F.R. Part 310.

25.    Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing", as defined by the TSR. 16 C.F.R. § 310.2(dd), (ff), and (gg).

26.    Under the TSR, a "seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to a customer in exchange for consideration. 16 C.F .R. § 310.2(dd).

27.    A "telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(ff).

28.    "Telemarketing" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. 16 C.F.R. § 310.2(gg).

29.    Defendants are sellers or telemarketers of "debt relief services", as defined by the TSR. 16 C.F.R. § 310.2(o). Under the TSR, a "debt relief service" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector. 16 C.F.R. § 310.2(o).

30.    The TSR prohibits sellers and telemarketers from requesting or receiving payment of any fees or consideration for any debt relief service until and unless:

a. The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; **and**

b. The customer has made at least one payment pursuant to *that* settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor; and to the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

    i. Bears the same proportional relationship to the total foe for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

    ii. Is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt.

16 C.F.R. § 310.4(a)(5)(i).

31.    The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, any material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using the service. 16 C.F.R. § 310.3(a)(2)(x).

32.    For instance, the FTC's own TSR Compliance Bulletin section titled "Payment Restrictions on Debt Relief Services" reads, in (most) relevant part:

"A debt relief service is a program that claims directly, or implies, that it can renegotiate, settle, or in some way change the terms of a person's debt to an unsecured creditor or debt collector. That includes reducing the balance, interest rates or fees a person owes. These services include debt settlement, debt negotiation, and credit counseling.

The TSR prohibits sellers and telemarketers from requesting or receiving payment for providing debt relief services until three requirements are met:

You must have renegotiated, settled, reduced or otherwise changed the terms of at least one of the customer's debts.

Your customer must agree to the settlement agreement, debt management plan, or other result reached with the creditor due to your service. According to the TSR, the agreement from the creditor must be in writing, although your customer may agree to it orally.

You can't take your fee in advance by getting your customer to agree to a blanket "pre-approval" of any settlement you might be able to negotiate in the future.

Your customer must have made at least one payment to the creditor or debt collector as a result of the agreement you negotiated.

. . .

Proportional fee. According to the TSR, your fee must 'bear the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount.' The 'individual debt amount' and the 'entire debt amount' refer to what your customer owed at the time she enrolled the debt in the service. So if you settle a proportion of a customer's total debt enrolled with you, you may get that same proportion of your total fee.

Under the TSR, you may require your customers to set aside your fee and funds to pay debts in a dedicated account as long as:

the account is held at an insured financial institution;

the customer owns the funds (including any interest accrued), controls them, and can withdraw them at any time;

you don't own or control the company administering the account or have any affiliation with it;

you don't split fees with the company administering the account; and

the customer can stop working with you at any time without penalty. If the customer decides to end the relationship with you, you must return the money in the account to the customer within seven business days (minus any fees you've earned from the account in compliance with the TSR).

_____

– 9 –

> The independent company that administers the account may charge the customer a reasonable fee, but it may not transfer any of the customer's funds to you — directly or indirectly — until you have renegotiated, settled, reduced, or otherwise changed the terms of at least one of your customer's debts and met all the related requirements in the TSR.
>
> **It's illegal to provide 'substantial assistance' to another company if you know they're violating the TSR, or if you remain deliberately ignorant of their actions. To avoid liability for facilitating violations of the TSR, companies that administer dedicated accounts should review the policies, procedures and operations of the debt relief providers to ensure they're complying with the advance fee ban provision of the TSR, including the provision relating to dedicated accounts. As they continue to administer dedicated accounts, companies also should investigate consumer complaints and disputed payments.** Some companies administering dedicated accounts may not be subject to the FTC's jurisdiction, but laws enforced by other government agencies may apply to them." *See* https://www.ftc.gov/tips-advice/business-center/guidance/complying-telemarketing-sales-rule#debtreliefservices3 (last visited on May 24, 2019) (emphases added).

33.    As described throughout this Third Amended Complaint, all named-Defendants have directly-profited from the illegal, unreasonable, advanced-fees for telemarketed "debt resolution services" that are never actually performed on behalf of Vivian Grijalva.

34.    All Defendants in this action have joint and several liability Vivian Grijalva for all damages caused to her by the Enterprise's willful, shocking, and wanton violations of the TSR.

**B.    The Defendants' Illegal Advanced-Fee "Student Loan Resolution" Telemarketing Scheme.**

35.    Vivian Grijalva has become a victim of the Enterprise's illegal, advanced-fee "student loan debt resolution" telemarketing scheme, as described in this Third Amended Complaint.

36.    Before getting into the specifics of Vivian Grijalva's factual allegations, the following are some illustrative consumer/client complaints, taken from publicly-available consumer-review Web sites, that describe the illegal, advanced-fee, telemarketing scheme committed, identically, by the Defendants against Vivian Grijalva (and many others):

37.     (CollegeInvestor.com, Forums, (last viewed: May 24, 2019),

http://forums.thecollegeinvestor.com/index.php?topic=367.0)

**Topic: Kevin Mason Law Firm**

    a.   June 13, 2016 (KCoop156): Has anyone worked or heard of Kevin Mason PA out of Boca Raton Florida. They told me they could sue my private student loans for consumer compliance issues and get them dismissed or settled for a lot less. I would be responsible for 50% of what I currently owe. He is a member of the florida state bar in good standing. But i havent found much more than that. I am afraid to get into a contract with him but then it be a scam. Would love some feedback.

    b.   June 13, 2016 (Response from College Investor Administrator): I've never heard of them, but that doesn't mean anything. There are tons of lawyers (both good and bad), out there.

Just be very careful in working with any law firm. Make sure that you ask them exactly what steps they are going to take in fighting your debt.

A lot of people get burned dealing with law firms trying to get their student loan debt dismissed.

Make sure they don't ever:
1. Ask you to stop making payments
2. Ask you to make payments to them

Both of these are big red flags that they are NOT trying to help you.
Most people don't ever need a student loan lawyer unless you're struggling to get out of default, or you are being sued by your private lender.

If neither of these apply, all good lawyer will:
1. Validate that the debts are legitimate (which you likely know to be the case)
2. Validate that they haven't violated any debt collection laws (which you could sue them for violating)

If you're making payments and have no issues, then a lawyer isn't a good option. If you did have one of the issues above, a lawyer could help.

When working with a lawyer, I prefer fee based approach for their time, versus settlement based approach. You simply pay for the lawyers time. Most won't do it, but many legitimate ones will.

    c.   July 21, 2016 (Response from College Investor Administrator): We don't recommend you make payments to a law firm and not your students loans because it will harm your credit score dramatically by not making payments.

While we don't know any plan of action you put together with this firm and what your individual arrangement is, a typical scenario looks like this:
- You stop paying your lender and make the same payment to this law firm
- Your credit score is badly damaged and your lender starts moving your loan to collections
- After a long time (it can vary from months to years), this law firm attempts to settle your debts by telling the lender "see, this guy is broke and hasn't made a payment to you in

THIRD AMENDED COMPLAINT

years... why don't you just settle and get what money you can today".
- The lender can always say nope, we will sue and garnish his wages and collect our debt. There is no way for them to truly guarantee a 50% cut in the loan.

No matter what the end result is, we've typically always seen the person who did them (i.e. you) in worse shape than before you started. There are no guarantees, the process can take years, and meanwhile you've harmed your credit to a point where you're not going to be buying a house, car, or maybe even have trouble renting an apartment for a long time.

Plus, making 5 years of payments to them versus your lender loses a lot of progress you could have actually made on your student loan debt.

Next steps going forward? I would look at your contract with them and see how you can cancel. I would tell them you are canceling. If you do think something is amiss, I would also encourage you to contact your state's attorney general, the Consumer Finance Protection Bureau, and even your State Bar and report the lawyer.
As for some red flags to look for based on what you wrote:
- You say this money is in an escrow account - what are the terms of the escrow agreement and is this escrow account held by a third party? That is a good indicator of whether the firm is being honest. A true escrow account will not be owned or operated by the law firm, but will be a completely third party and there will be terms about when the money can be withdrawn either to be returned to you or paid to the law firm.

- How can the law firm be late filing paperwork for you and what paperwork are they actually filing? What are you asking be done at Transunion that would require a lawyer? Whether or not its a scam, a firm that does not meet deadlines set forth in the original agreements is never one I want to work with.

    d.   **July 25, 2016 (Final response from College Investor Administrator)** If you're paying by credit card I would dispute the charge and cancel the contract with them. You run the risk they would collect, but it's probably less harm to your credit than what they propose.

Second, I would report them to the CFPB and the state attorney general. The whole thing sounds wrong, unprofessional for sure.

    e.   **August 8, 2016 (Response from G434):** Complain to Attorney General and FL Bar. I am in same boat and will not slander as I do not want to end up in defermation law suit. I am just encouraging to use proper channels to resolve this. It seems after 1 year, those who have been involved are realizing (unfortunately a bit late) that something is really wrong.

    f.   **October 5, 2016 (Response from bgrasso):** Hello everyone,

I just wanted to weigh in on my experience so far with Kevin Mason law handling my private student loans with Navient (Sallie Mae).
Last September I was contacted by Joe DeVito from National Legal Staffing Support on behalf of Kevin Mason PA to sue Navient for unlawful practices. He told me Kevin Mason had been very successful with getting student loans from Navient completely dismissed. At this point I had been paying my private student loans over $700/month for about 5 years and hadn't seen even a dent made  in my principal balance (around $100k). I was desperate and Joe told me exactly what I wanted to hear, like "you can finally buy a house and start a life!", and caught me hook line and sinker. He told me to stop making

payments to Navient immediately and I would start making the same monthly payments ($718/month) to the law firm but I would only make them for 5 years, versus 10 years with navient, and no interest would accrue. He told me the $ I paid them would go towards legal fees and if Navient settled for a small amount (1-2%) instead of completely dismissing my loans. He also said legal assistants would monitor my credit, as well as my father's (who co-signed my loans), to make sure Navient wasn't reporting anything negative as it is illegal for them to do so once they receive cease & desist letters from the law firm.

I honestly still can't believe I fell for any of this. A few months in I noticed they weren't doing things they said they would (like sending paperwork as another person on the forum stated). I was offered a job in NY at the beginning of this year and needed to get an apartment here. That's when I found out my credit score had gone from a 700 to a 500 and I had to pay double the amount of a deposit on an apartment just to move. I contacted my legal assistant at National Legal Staffing Support and she said there was nothing they could do besides send dispute letters to the credit bureaus which I got no actual proof of them doing and even if they did it didn't help at all. My fathers credit also dropped and he couldn't even rent a car to help me move. No one at the law firm seemed to care or even remember I was told my credit would be monitored and this wouldn't happen.

In August I received an email from them saying Navient had sent them a settlement offer (although I never got actual proof of this offer) for $41,500. I thought it was great news since I was told the money I was paying the law firm would go towards a settlement but boy was I wrong. After pretty much having to beat a real answer out of Joe he told me I would have to pay both the settlement from Navient AND the law firm, meaning it would equal around the same amount as my original loan balance and all I did was ruin my credit. They said they would keep trying to go for complete dismissal but it seemed like all they were using for dismissal were the 3 calls Navient made to me since receiving the cease & desist from the law firm. I was given no actual proof of them doing any case work and I really believe they will just use illegal calls made for dismissal.

I started doing research on Kevin Mason and NLSS and a lot of people were saying it's a scam and to contact the Attorney General of Florida so I did. I gave them the whole story and when someone contacted me back last week they asked for more information and said they were sending my Amended First Amended Complaint to Kevin Mason but all they could really do is mediate the Amended First Amended Complaint between us. Yesterday I received a VERY angry voicemail from someone named Greg at NLSS who literally screamed at me for filing the Amended First Amended Complaint, stated they "bent over backwards for me" when I needed a 5 day payment extension ONE time, and they've "worked so hard on my case" and are going to cancel it. I'm actually terrified to call back because this person berated me so much just on a voicemail message. Has anyone else gone this far yet with them and had any sort of help from the attorney general? I have no idea what is going to happen next and I'm scared to find out.

g. October 10, 2016 (Follow up comment from bgrasso): Hi Swamileoni,

I finally was able to get Joe DeVito (not DeSilva as you stated) to send me an email on how the debt settlement would work after he called me numerous times and I kept emailing him to tell him I wanted the information in an email and not over the phone as I feel they twist their words over the phone. When I first spoke to Joe last year about signing up for the program he told me Kevin Mason would challenge the debt with Navient by using unethical practices and classes I was charged for and didn't need but now they seem to only be concerned with having the Call Log filled out and one of the legal assistants I deal with at NLSS stated the last time I spoke to him "we're going to need these calls if we want full dismissal of the loans" which made me believe they aren't doing any real work and are just going to use the 3 illegal calls Navient has made to me since receiving the cease & desist from the "law firm". I am going to email Joe this week to ask

for detailed information on all the work they've done on my case so far and will withhold any future payments to NLSS until I receive the info. And no, they did not send me an actual settlement letter from Navient, just a letter typed up by Kevin Mason stating the law firm received a settlement offer from Navient for the $41,500 so I will be asking for proof of that as well.

Have you tried disputing any payments you made to the law firm? I've paid them almost $10,000 now and I'm just going to assume I probably won't be getting any of that back. And have you already reached out to the Attorney General in Florida? Someone from the Department of Agriculture contacted me back but I don't seem to be getting anywhere with them, they just keep telling me to get a lawyer, a real lawyer.

38.     The following are some additional illustrative consumer/client complaints and questions from Reddit.com relating to the illegal, advanced-fee, "student loan debt resolution" scheme of the Defendants that is the subject of this lawsuit:

39.     (Reddit.com, Forums, (last viewed: May 24, 2019), https://www.reddit.com/r/personalfinance/comments/3je2to/kevin_mason_law_office_student_loan/

**"Kevin Mason Law Office student loan consolidation/forgiveness a scam?" Reddit Comment Thread:**

a.     Submitted '3 Years Ago" by pinion13: I was hoping someone could shed some light on this and I figured this sub might be the place to do it. This law office: www.kevinmasonlaw.com called offering legal assistance with basically taking action against the company servicing my private loans and promising that they could cut the loans in half through a settlement. The part that makes me feel like it is a scam is I would have to then, apparently, pay back the law office because they will "pay off" my loans. This is if I understood correctly. I got all the information from her in an email and told her I couldn't continue talking right now, but would be in touch. This almost sounds like something that could be legit, but who knows. What do you guys think, is this a scam?

b.     Response from DebtResThowaway: Here's how it works: Kevin Mason handles unsecured debt and private student loans. He does not deal with federal student loans, mortgages, etc.Kevin Mason charges 50% of the unsecured debt that you want dismissed as a retainer fee. This is of the principal amount, not the total payoff if you kept making payments (which is usually 2-3 times more). He allows you to pay this amount in monthly payments that have no financing or interest attached.

There are two outcomes. He is able to completely dismiss the debt or settle for a fraction of the amount. The dismissals occur when the creditors have violated the consumers rights (usually either through the a few different acts, FCBA is one of them). If there is more interest I'll dig up the exact ones.

For a private student loan, lets take an extreme just for the sake of discussion. Let's say you see a commercial for a trade school. It advertises that people graduating are earning 50k a year and they have a 98% placement rate of their students. You are excited and decide to enroll. You are young and don't know much about finance. They loan you 60k.

You graduate and can't get a job for a year or two. You take crap jobs in the meantime because you know now with your new skillset it is a matter of time till you are doing what you love. Except you find that job , and it pays 35k a year. You ask around , maybe contact some old school mates, they are all either not in their field of study or earning 30-40k a year.

How can a financial institution think an 18 year old who is going into a field that pays 35k a year is ever going to be able to pay back 60k?(really far more once you compute the terms)? Did the advertisement claiming 98% placement misrepresent the "product" that was financed?

This is an over simplified slam dunk scenario just to give you an idea of the possibilities when using a lawyer who specializes in consumer protection law.

No lawyer can give a guarantee, it would be like you getting arrested for murder and the lawyer telling you he can guarantee you will get off.

One other thing, Kevin Mason is not a bankruptcy lawyer. This isn't because bankruptcy is inherently bad, it's just not what he specializes in. In some cases bankruptcy may be the better option for you.

c.    Response from CynFul22: Can you speak to what happens to your credit and your co-signers credit while Mr. Mason is fighting to lower your debt? Also, I received their retainer for half my debt, but what concerns me is that no where in writing does it state that the money I pay into the trust account each month for the length of my dispute will be used to settle the original debt. Does that make sense? So let's say I sign this retainer for nearly $42k, and Mr. Mason is able to get my debt lowered from the current $82k down to $50k. Where does it ever specify that I will not be responsible for the $50k AND NOW on top of that this $42k retainer. Hope that makes sense, any feedback would be appreciated.

d.      Response from MyMoronRadarFoundYou: They are only offering settlement services where they offer a settlement, and do not offer any sort of guarantee. In addition they are pushing student loan consolidation and modification as if it is only a service they can do when actually all federally insured student loans offer students an opportunity to apply for these directly with the servicer. In addition he is slyly implying that he can handle the forgiveness of the debt, but that's through bankruptcy, which any BK attorney can do. Federally insured student loans are generally exempt from being discharged in a bankruptcy so that probably won't work

e.      Answer to question ("Did you ever move forward with them? I (G_Blaze) just got a call from them today and I kind of got that "scam" feeling.) from pinion13: No I didnt, felt to much like a scam. It felt like they would take over your debt, then try to battle it out in court to try to reduce them, and if they can't lower the debt they would more than likely charge you for their services and now they have your debt, probably at a higher interest rate. Somewhere in their contract I'm sure there is something that will completely screw you over.

40.      The following is another illustrative comment post from the Web site, Disqus.com, that provides relevant, publicly-available, third-party comments about the Kevin Mason/NLSS (now GM Law Firm) "Student Loan Debt Resolution" program: (Disqus.com, (November 7, 2018), https://disqus.com/home/discussion/getoutofdebtguysite/this_is_how_you_can_settle_your_navient_student_loan/, posted by "Brittany Grasso":

Also wondering what happened during/after your settlement with Kevin Mason? Since Navient offered a 55% settlement and you were only paying 50% to Kevin Mason did you have to pay the remaining 5%? Also, was your credit fixed after the lawsuit?
I was also suckered into using Kevin Mason law to lower the remaining $92k+ on my private Navient loans and now owe $46k+ to Kevin Mason and have been paying them over $700 a month for about a year now.
They never warned me that my pretty great credit score would be completely destroyed as well as my dad's, who was my co-signer. It's really stressing me out and I'm losing a lot of sleep lately. I actually missed a wedding yesterday because I tried renting a car and couldn't because of my now 498 credit score.
They keep telling me it will take up to 3 years for a resolution and there isn't a guarantee my credit will be fixed, 2 things they never mentioned in the beginning and I honestly can't imagine suffering through 2 more years of bad credit and stress like this.
I should've just kept paying Navient the $700+ a month for the next 10 years just for peace of mind I

guess. I also just received letters from Navient saying my loans are now in default and will be turned over to a collection agency..did this happen to you as well? I emailed the person I'm set up with at national legal staffing about how they can still have a suit against Navient now that my loans are now in the hands of a collection agency and they haven't gotten back to me yet.
Any advice on what I can do or what my rights are? Please help!

41. The Affidavit of former National Legal Staffing Support Document Specialist Supervisor, Je'henna Williamson, who describes – and affirms – the allegations contained in this Third Amended Complaint is attached to, and incorporated into, this Third Amended Complaint as Exhibit "1". This whistleblower Affidavit was filed as [ECF Doc. No. 86] in the related matter of *Ali, et al. v. Mason, et al.*, Cause No.: 2:18-cv-1110-CBM-FFM (Central District of California). This Affidavit is relevant to the claims of this lawsuit and it is reliable.

42. According to the Affidavit of Je'henna Williamson, former Document Specialist Supervisor for NLSS, Ex. 1 to this TAC, and consistent with the investigation and experience of Vivian Grijalva, the following are true:

(a) "First, NLSS, Resolvly, LLC, and GM Law Firm are all controlled, if not entirely owned, by a Florida resident named Gregory Fishman." Williamson Aff., Ex. 1, at Paragraph 4.

(b) "NLSS, Resolvly, LLC, and even GM Law Firm are not legitimately-separate business entities. They are controlled, managed, and primarily, if not entirely, owned by Gregory Fishman. These business entities are nothing more than alter egos for Gregory Fishman to hide behind to conceal his racketeering activities." Williamson Aff., Ex. 1, at Paragraph 5.

(c) "These business entities – NLSS, Resolvly, and GM Law Firm – are fictions. They are shell companies controlled by Gregory Fishman for the sole purpose of him perpetuating, and profiting from, his frauds." Williamson Aff., Ex. 1, at Paragraph 6.

43. Further, according to the Williamson Affidavit, Ex. 1:

(a) "NLSS regularly (i.e., daily) forges client signatures of legal documents, including client retention agreements. This is a routine pattern and practice of NLSS

management, as directed by Gregory Fishman." Williamson Aff., Ex. 1, at Paragraph 7(a).

(b)      "The student loan resolution 'program' marketed by the Defendants in this case, Ali, et al. v. Mason et al., is, indeed, a lie and a fraud. NLSS/GM Law Firm/Kevin Mason, P.A., simply steals their clients' (victims') money via the monthly auto draft payments that NLSS/GM Law Firm/Kevin Mason, P.A., defraud from their clients (victims). Williamson Aff., Ex. 1, at Paragraph 7(b).

(c)      "Gregory Fishman recruits the attorneys who are complicit in this student loan resolution racket. Gregory Fishman/NLSS/Resolvly have the entire marketing materials (that are lies), payment structure, the entire racket set up. Gregory Fishman recruits' [sic] attorneys with the lure of easy money to place their seals of authority onto this fake student loan resolution 'program.'" Williamson Aff., Ex. 1, at Paragraph 7(c).

44.      As a matter of fact, the CFPB has released at least two separate Consumer Advisory Notices specifically stating that so-called advanced-fee "student loan debt resolution" programs, of the nature perpetuated by the Defendants in this matter, are, in a nutshell, illegal scams.

45.      The first of these relevant CFPB Consumer Advisory Notices, "Consumer Advisory: You don't have to pay someone to help you with your student loans," July 3, 2013, by Rohit Chopra, is attached, and incorporated into, this Third Amended Complaint as Exhibit "2".

46.      The second of these CFPB Consumer Advisory Notices, "Consumer Advisory: Student debt relief companies may cost you thousands of dollars and drive you further into debt," December 11, 2014, by Rohit Chopra, is attached, and incorporated into, this Third Amended Complaint as Exhibit "3".

47.      Plaintiff was improperly solicited into the Defendants' "Student Loan Debt Resolution" scheme via illegal, and deceptive, telemarketing by the Defendants, or their agents.

48.     The Plaintiff, Vivian Grijalva, has suffered serious financial and personal harm from wrongful activities of the Defendants, as described in this Third Amended Complaint.

**C.      Specific Factual Allegations Vivian Grijalva against Each of the Defendants, Respectively.**

49.     On or about early November 2015, Vivian Grijalva received a telemarketing telephone call from an agent of "NLSS", on behalf of NLSS, Kevin Mason, P.A., and attorney, Kevin Mason.

50.     During this call, the telemarketing sales agent of NLSS/Kevin Mason/Kevin Mason, P.A., whose identity is currently unknown, described the terms of the purported "student loan debt resolution" settlement program that is at issue in this lawsuit.

51.     The terms of the (then) "Kevin Mason Settlement Program" that were represented to Plaintiff, Vivian Grijalva, orally, during the telemarketing telephone calls that NLSS/Resolvly made to her in early November 2015, and that induced her to join this purported "program", are contained in both the "Program Overview" materials and the "Welcome to the Program" materials, which are incorporated, by reference, into this Third Amended Complaint.

52.     A copy of the "Program Overview" marketing materials – which also functions as a telemarketing sales script for this Enterprise – provided by the Defendants to Vivian Grijalva (either through sending them the written marketing materials, as attached to this lawsuit, or by reading them, orally, during the telemarketing sales pitches) is attached to, and incorporated into, this Third Amended Complaint as Exhibit "4". Vivian Grijalva distinctly recalls the agents of the Defendants on the November 2015 cold-call sales call making to her the exact promises of complete dismissal of her entire student loan debt in exchange for her paying 50% of her total loan balance, paid over 60 monthly-installments, that are contained in Ex. 4 to this Third Amended Complaint. Vivan Grijalva, by joining the Defendants' "program" and making her "program" payments faithfully for five years, relied on these false promises of the Defendants, and their sales agents.

53.     Page 18 of this "Program Overview", Ex. 4, contains irrefutable examples of the fraudulent misrepresentations made during telemarketing calls to prospective clients, like Vivian Grijalva, of this racket in order to induce them to agree to the monthly, illegal, advanced-fee, RAM-processed payments. Page 18 of the standard Kevin Mason/NLSS Welcome Packet states:

"The costs of the service are a fixed flat fee that your attorney has allowed you to make monthly installment payments. In order to do this, your attorney utilizes a payment processing company called National Legal Staffing Support. This is the name that will show up on your monthly bank statement. This fee is all that you will have to pay. **Nothing more, nothing less.**

You can expect to be debt free with 39 to 48 months from your first payment. It could be less, but not longer. The reason being is that the litigation process may take shorter because in many cases the banks and their debt collectors settle within the first 12 months of the lawsuit. This is a good thing." *See* Ex. 4, at Page (Slide) 18.

54.     Although they likely regret it now, the Defendants put their telemarketing sales script, represented to and relied upon by Vivian Grijalva, in writing when they created their "Program Overview", Ex. 4.

55.     The Plaintiff does not have the telephone calls recorded, but the exact terms of the specific promises contained on Page 18 of Ex. 4 were made by the NLSS salespersons on all telemarketing calls received by Plaintiff that induced her to sign up for the Defendants' "student loan debt resolution program."

56.     Moreover, Vivian Grijalva was told, during the telemarketing sales calls on the front-end to her, consistent with Page 18 of Ex. 4, that NLSS was the "payment processor" for the "attorneys" who supervise, operate, and manage the so-called "student loan debt resolution program".

57.     The truth, it turns out, is that RAM is the payment processor for this so-called "program"; NLSS actually functions as the "law firm", staying in contact with the clients (although feeding the clients lies, in order to keep the monthly payments coming from RAM for as long as possible); and the "attorneys", Kevin Mason and Chantel Grant, are phantoms,

insofar as they do not directly communicate with their clients, outside of rare occasions (like when litigation gets threatened, and only after jumping through many hoops to get such a call scheduled).

58.     Interestingly, attorneys, Chantel Grant and Kevin Mason, refuse to answer Vivian Grijalva's questions about their "student loan debt resolution program" in writing. This is to avoid written descriptions of their "program" that would provide evidence of their wrongful acts.

59.     Further, the Kevin Mason "Welcome to the Program" materials/sales script, either sent to, or orally presented to Vivian Grijalva by the NLSS sales staff, is attached to this Third Amended Complaint as Exhibit "5".

60.     According to the "Welcome to the Program" materials/script: "The Law Office Of Kevin P. Mason P.A. IS A BOUTIQUE MULTI-JURISDICTIONAL LAW FIRM BASED IN SOUTH FLORIDA. OUR PRACTICE IS FOCUSED ON CONSUMER RIGHTS IN STATE AND FEDERAL COURT, AS WELL AS IN ARBITRATION MATTERS. OUR PRACTICE ENCOMPASSES DEFENDING OUR CLIENTS' RIGHTS AGAINST ABUSIVE AND ILLEGAL PRACTICES BY DEBT COLLECTORS, CREDITORS, AND CREDIT REPORTING AGENCIES. THE STAFF AT The Law Office Of Kevin P. Mason P.A. HAS MANY YEARS OF EXPERIENCE REPRESENTING PEOPLE LIKE YOU, THE AMERICAN CONSUMER, WHO IS FACING A VARIETY OF LEGAL ISSUES. OUR NETWORK OF ATTORNEYS AND PROFESSIONAL STAFF WILL PROVIDE EXPERT GUIDANCE AND REPRESENTATION. WE HAVE DEDICATED OUR CAREERS TO STANDING UP FOR YOUR RIGHTS. WE WILL ENSURE THAT THE BEST POSSIBLE OUTCOME IN YOUR LEGAL MATTER IS ACHIEVED." Ex. 5, "Welcome to the Program" materials/script, at Page 3.

61.     Yet, perplexingly, and despite the "Welcome to the Program" materials, Ex. 5, being from "your attorney", Kevin Mason, and "your law firm", Kevin Mason, P.A., the final page (Page 20) of Ex. 5 contains the following:

**ADDITIONAL QUESTIONS?**
CONTACT US.



PHONE: 1-877-212-6920          FAX:    866-219-7237

62.     A copy of Vivian Grijalva's, November 16, 2015, engagement letter with Defendant, Kevin Mason, and his law firm – the precursor to GM Law Firm – is attached to, and fully incorporated into, this Third Amended Complaint as Exhibit "6".

63.     On August 30, 2017, without explanation, the Defendants' Enterprise (via agents of National Legal Staff Support") sent Vivian Grijalva a "Limited Scope Legal Services Agreement" to be entered between the Plaintiff and GM Law Firm, LLC, an entity that she had never heard of prior to that point. This same "Limited Scope Legal Services Agreement", retaining the new law firm of GM Law Firm, PLLC, without any explanation provided, was sent to Vivian Grijalva on or about late August 2017.

64.     A copy of Plaintiff, Vivian Grijalva's, August 30, 2017, "Limited Scope Legal Services Agreement" with Defendants, Kevin Mason, Chantel Grant, and their new law firm, GM Law Firm (the current attorney-front for this RICO Enterprise), is attached to, and fully incorporated into, this Third Amended Complaint as Exhibit "7".

65.     Shockingly, Vivian Grijalva's student loan debt – held by student loan lender, Navient – had already been dismissed in a California state court collection lawsuit prior to Vivian Grijalva being solicited by NLSS/Resolvly as a part of this student loan debt resolution racket.

66.     The Summons from this state court collection action – that was dismissed at trial in favor of Vivian Grijalva - is attached to, and incorporated into, this Third Amended Complaint as Exhibit "8".

67.     To be clear: this Summons, Ex. 8, is dated August 11, 2010. This means that, at the time that NLSS/Resolvly first solicited her via telemarketing phone calls **that Vivian Grijalva's student loan debt had already been dismissed in California state court *and* the statute of limitations to collect on that debt had run years before.** The Defendants have done nothing other than defraud Vivian Grijalva, steal tens of thousands of dollars from her, and cause her severe harm. This is the well-established pattern and practice of these Defendants and their RICO Enterprise.

68.     NLSS, via advanced-fee payments processed by RAM, drafted $446.85 from Vivian Grijalva, monthly, for approximately five years, **without providing her any debt resolution, or legal services, or any value, whatsoever.**

69.     Further, this financial loss has caused Vivian Grijalva a cascade of financial, hedonic, and psychological harm to be described to the jury at trial.

## V.     TOLLING

70.     Vivian Grijalva had no way of knowing the true nature and extent of Defendants' illegal advanced-fee "student loan debt resolution" telemarketing scheme necessary to prosecute her claims. As demonstrated by this Third Amended Complaint, the Defendants were intent on hiding their behavior from Vivian Grijalva.

71.     Defendants were under a continuous duty to disclose to Plaintiff the true character, quality, and nature of the legal representation, and other "student loan debt resolution" services, that they were providing.

72.     Defendants knowingly and actively concealed their illegal advanced-fee "student loan debt resolution" telemarketing scheme, and Plaintiff reasonably relied upon Defendants' knowing and active concealment. Plaintiff had no way of knowing the true character, quality and nature of the legal representation for which she had been charged.

73.     Accordingly, the applicable statutes of limitations have been tolled by operation
of the discovery rule and Defendants' concealment with respect to all claims pleaded in this
Third Amended Complaint, and Defendants are estopped from relying on any statutes of
limitations in defense of this action. Further, Defendants' conduct, as directed by Gregory
Fishman, Julie Queler, Kevin Mason, and Chantel Grant, was part of a continuing, systematic
practice, with the last act in this ongoing illegal, advanced-fee "student loan debt resolution"
telemarketing scheme taking place within the applicable statute of limitations. As such, the
Defendants are liable for all acts undertaken as part of the scheme as continuing violations.

## VI.    CLAIMS

### FIRST CLAIM

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(C) ON BEHALF OF THE NATIONWIDE CLASS AND THE SUB-CLASSES AGAINST ALL DEFENDANTS

74.     Plaintiff hereby incorporates, by reference, the preceding paragraphs as if they
were fully set forth herein.

75.     Plaintiff is a "person" as that term is defined in 18 U.S.C. §§ 1961(3) and
1962(c).

### A.    Enterprise

76.     For purposes of this claim, the RICO "enterprise" is an association-in-fact, as
the term is defined in 18 U.S.C. §§ 1961(4) and 1962(c), consisting of Kevin Mason, P.A.; GM
Law Firm, LLC; Kevin P. Mason, esq., individually; Chantel L. Grant, esq., individually;
National Legal Staffing Support, LLC; Resolvly, LLC; Gregory Fishman, individually; Julie
Queler, individually; John and Jane Doe Defendants 1-5, and XYZ Business Entity
Defendants 1-5 ("the Enterprise"). The Enterprise is separate and distinct from the persons
that constitute the Enterprise.

77.     The Enterprise was primarily managed by Gregory Fishman, Julie Queler, Kevin
Mason, and Chantel Grant.

78.     The companies and individuals that constitute the Enterprise were associated for the common purpose of defrauding their clients by charging them for illegal, advanced-fee "student loan debt resolution" legal services, via a nationwide telemarketing operation, and otherwise defrauding clients out of their monthly fees based upon promises of complete student loan debt elimination through their "program".

79.     At all relevant times, the Enterprise was engaged in and its activities affected interstate commerce. The proceeds of the Enterprise were distributed to its participants.

80.     The Enterprise has operated from at least January 2015 and its operation is ongoing. The Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which the participants engage.

### C.     The Pattern of Racketeering Activity

81.     At all relevant times, in violation of 18 U.S.C. § 1962(c), Gregory Fishman, Julie Queler, Kevin Mason, and Chantel Grant have managed the affairs of the Enterprise through a pattern of racketeering activity as defined in RICO, 18 U.S.C. § 1961(5), as described in this Third Amended Complaint. Gregory Fishman, Kevin Mason, and Chantel Grant have conducted the affairs of the Enterprise and participated in the operation and management of the Enterprise. Gregory Fishman and Julie Queler participate in this pattern of racketeering activity through the business entities, National Legal Staffing Support and Resolvly.

### D.     The Predicate Acts of Mail and Wire Fraud and Violations of the Telemarketing Act and the Telemarketing Sales Rules

82.     The pattern of racketeering activity consisted of mail and/or wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Specifically, Kevin Mason, Chantel Grant, Gregory Fishman, NLSS, and Resolvly, engaged in an intentional scheme or artifice to defraud their clients into setting up monthly auto draft payments under the false, or negligent, premise that the Defendants would completely eliminate their clients' student loan balances with their respective creditors for payment of 50% of their total loan balance, paid over five years of monthly payments to NLSS/Kevin Mason/GM Law Firm, via RAM as the payment-processor.

83.     Of course, the promises of total student loan debt elimination rarely, if ever, happen. Upon information and belief, the Defendants simply pocket these "plan payments" and otherwise convert them for their own, personal gain.

84.     The false statement and omissions, and mail and/or wire communications that were made by NLSS/Kevin Mason/Resolvly/GM Law Firm/John and Jane Does Defendants 1-5/XYZ Business Entity Defendants 1-5 in furtherance of the scheme constituted predicate acts of mail and/or wire fraud.

85.     It was reasonably foreseeable to all Defendants that the mails and/or wires would be used in furtherance of the scheme, and the mails and/or wires were in fact used to further and execute the scheme.

86.     The nature and pervasiveness of the Enterprise necessarily entailed frequent wire and/or mail transmissions. The precise dates of such transmissions cannot be alleged without access to the books and records of the Defendants. Nevertheless, Plaintiff can allege such transmissions generally.

87.     For the purpose of furthering and executing the scheme, the Defendants regularly transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, electronic data and funds, and also regularly caused matters and things to be placed in post offices or authorized depositories, or deposited or caused to be deposited matters or things to be sent or delivered by private or commercial interstate carrier.

88.     These communications contained both affirmative misrepresentations about the nature of the charges, and were also intended to deceive Plaintiff into believing that the monthly charges assessed to her bank account was legitimate.

89.     These are only examples of certain instances of the pattern of racketeering activity consisting of mail and/or wire fraud violations engaged in by the Defendants. Each electronic and/or postal transmission was incident to an essential part of the scheme. As detailed above, the Defendants engaged in similar activities with respect to Plaintiff, and likely thousands of other victims, nationwide.

90.     Each interstate wire transfer of funds from the Plaintiff to RAM, and then from RAM to NLSS (and presumably further downstream transfers, from there, to the other participants in this Enterprise), was incident to an essential part of the scheme. As detailed above, the Defendants engaged in similar activities with respect to Vivian Grijalva, and thousands more, nationally.

91.     Additionally, each such electronic and/or postal transmission constituted a predicate act of wire and/or mail fraud in that each transmission furthered and executed the scheme to defraud the Defendants' clients, including Vivian Grijalva.

92.     The predicate acts of mail and wire fraud constitute a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5). The predicate acts were not isolated events, but related acts aimed at the common purpose and goal of defrauding the Defendants' clients to pay unlawful, monthly, advanced-fees for telemarketed "student loan debt resolution" legal services (as a part of a "settlement program" that also does not exist), solely in order for the Defendants to reap illicit profits.

93.     Additionally, Defendants, NLSS/Resolvly/Gregory Fishman/Julie Queler/Kevin Mason/Kevin Mason, P.A./GM Law Firm/Chantel Grant/John and Jane Doe Defendants 1-5/XYZ Business Entities 1-5 all directly engaged in a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(5), by their repeated, flagrant, and continuing violations of 16 C.F.R. § 310.4(a)(5)(i)'s prohibition on the collection of payment of advanced-fees for telemarketed "debt relief services" prior to the underlying consumer debts having either been settled or renegotiated.

94.     Even further, Defendants, NLSS/Resolvly/Gregory Fishman/Julie Queler/Kevin Mason/Kevin Mason, P.A./Chantel Grant/John and Jane Doe Defendants 1-5/XYZ Business Entities 1-5 all directly engaged in a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(5), by their repeated, flagrant, and continuing violations of 16 C.F.R. § 310.3(a)(2)(x). This is because the TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, any material aspect of any debt relief service,

including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using the service.

95.     All Defendants have substantially participated in these predicate acts. These activities amounted to a common course of conduct, with similar pattern and purpose, intended to deceive borrowers.

### E.     Injury to Vivian Grijalva

96.     As a direct and proximate result of violations of 18 U.S.C. § 1962(c) by Defendants, Vivian Grijalva has been injured in her business or property within the meaning of 18 U.S.C. § 1964(c). Plaintiff paid and was charged for unlawful, monthly auto draft charges to her bank account by reason, and as a direct, proximate and foreseeable result, of the scheme alleged.

97.     Under the provisions of 18 U.S.C. § 1964(c), all Defendants are jointly and severally liable to Vivian Grijalva for three times the damages sustained, plus the costs of bringing this suit, including reasonable attorneys' fees.

## SECOND CLAIM

## VIOLATIONS OF THE TELEMARKETING AND CONSUMER FRAUD AND ABUSE PREVENTION ACT, 15 U.S.C. §§ 6101-6108, AND THE TELEMARKETING SALES RULES, 16 C.F.R. PART 310, <u>AGAINST ALL DEFENDANTS</u>

98.     Plaintiff incorporates, by reference, the preceding paragraphs as if they were fully set forth herein.

99.     To induce customers, like Vivian Grijalva, to pay the advanced fees, Defendants' telemarketers have claimed that the student loan debt relief is guaranteed and, if Defendants were unable to secure the promised debt relief, they would refund fees charged to consumers.

100.    Defendants' telemarketers have typically collected consumers' payment information on the initial phone call. Defendants have charged consumers advanced-fees for purported debt relief services before achieving any results, and, in many instances, have failed

to achieve any results on behalf of the consumer. This is certainly the case with Vivian Grijalva in this matter.

101.    In fact, Defendants', Kevin Mason/Kevin Mason, P.A./NLSS/GM Law Firm/Chantel Grant's, contracts state that they will not perform services on the loans until payment has been received.

102.    In numerous instances, Defendants' telemarketers have emailed consumers a link to a contract to sign electronically. Defendants' telemarketers have typically pressured consumers into quickly signing the contract electronically while the telemarketer is still on the phone.

103.    The Plaintiff in this action did not receive the debt relief services that Defendants, and their agents, promised her.

104.    The Defendants do seem to do one thing, and only one thing: send cease and desist letters to their clients' loan servicers, but only to place their clients' loans into the "do not contact" category. This simply delays consumers' discovery that their student loans are not being paid and that they have not been enrolled in a forgiveness program or other repayment plan, while Defendants continue to collect their monthly fees.

105.    Moreover, contrary to Defendants' telemarketers' oral representations, consumers' payments to Defendants are not applied to their student loans; rather, Defendants keep them as illegal, advanced-fees.

106.    In connection with the telemarketing of student loan debt relief services to Plaintiff, as described in this lawsuit, Defendants have requested or received payment of a fee or consideration for debt relief services before:

   a.    Defendants have renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and

   b.    The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor.

107.    Defendants' acts or practices, as described in this Third Amended Complaint, are abusive telemarketing acts or practices that violate Section 310.4(a)(5)(i) of the TSR and that have caused Vivian Grijalva in excess of $50,000 in actual damages.

108.    Further, prior to the filing of this Third Amended Complaint, Vivian Grijalva has provided written notice to the Federal Trade Commission of her private lawsuit against the Defendants for, among other causes of action, violations of the Telemarketing Sales Rules.

109.    Vivian Grijalva brings her private causes of action under the TSR and demands all relief, as described in this Third Amended Complaint for these violations, jointly and severally, from the Defendants.

**THIRD CLAIM**

**FRAUD**
**<u>AGAINST ALL DEFENDANTS</u>**

110.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth in this Third Amended Complaint.

111.    In the alternative to the Plaintiff's negligence-based claims, the intentional misrepresentation of material facts related to the purported "private student loan debt resolution program" made by Defendants, NLSS/Kevin Mason, P.A./Kevin Mason/GM Law Firm/Chantel Grant, and their agents, to Plaintiff constitute separate frauds that have been committed against Vivian Grijalva, as detailed in this Third Amended Complaint.

112.    The Defendants have committed, or actively participated in, knowing and intentional misrepresentations of the services provided by the "student loan debt resolution program" that is at issue in this lawsuit. These misrepresentations – that Vivian Grijalva will be entirely debt free from her student loans for payment of 50% of her total student loan balance, in connection with the "program", over five years' of monthly payments – are material and that are knowingly false.

113.    As a result of her reasonable reliance on the Defendants' fraudulent misrepresentations, detailed through this Third Amended Complaint, Plaintiff, Vivian Grijalva, has suffered an ascertainable loss of money, property, and other hedonic damages.

114.    As a result of Defendants, and their agents', fraudulent misrepresentations about their "student loan debt resolution program", Vivian Grijalva is entitled to recover compensatory damages, all costs of litigation, along with punitive damages in an amount sufficient to deter such conduct in the future, and attorney's fees.

### FOURTH CLAIM

### LEGAL MALPRACTICE (PROFESSIONAL NEGLIGENCE) AGAINST DEFENDANTS, KEVIN MASON, P.A., KEVIN MASON, GM LAW FIRM, CHANTEL GRANT, AND JOHN AND JANE DOE ATTORNEY DEFENDANTS 1-5

115.    Plaintiff incorporates, by reference, the facts pleaded in the preceding paragraphs of this Third Amended Complaint.

116.    Attorneys, Kevin Mason, Chantel Grant, and their law firms, Kevin Mason, P.A., and GM Law Firm, LLC, and currently unidentified attorneys and business entities working with these attorney and law firms (John and Jane Does 1-5) have committed breaches of the tort-based duties that they owed to Vivian Grijalva, as their client. These Defendants are the "Attorney and Law Firm Defendants" in this lawsuit.

117.    As a result of her reasonable reliance on the Attorney and Law Firm Defendants' negligent omissions/negligent legal services – believing that the Attorney and Law Firm Defendants would eliminate her student loan debts, as promised – Vivian Grijalva has suffered an ascertainable loss of money, property, and other damages (including damage to her credit reports).

118.    Further, the Attorney and Law Firm Defendants violated the professional duties that they owed to Vivian Grijalva when they charged her their illegal, and unreasonable, advanced-fees for the telemarketed student loan debt relief promised to Vivian Grijalva, described *supra*, but that the Attorney and Law Firm Defendants never actually provided.

119.    Based upon this professional negligence cause of action against the Attorney and Law Firm Defendants, Kevin Mason/Kevin Mason, P.A./GM Law Firm/Chantel Grant,

Plaintiff demands a judgment against these Defendants, jointly and severally, for: all actual damages suffered as a result of the negligence of these Defendants; all consequential damages suffered as a result of the negligence of these Defendants; a refund of all monies paid to these Defendants, with pre-and-post judgment interest; all attorney's fees; all costs of litigation.

120.    The Attorney and Law Firm Defendants are joint-and severally liable to Plaintiff for their legal malpractice – based upon their concerted action and scheme – as pleaded in this Third Amended Complaint.

## FIFTH CLAIM

## BREACHES OF THE DUTY OF GOOD FAITH AND FAIR DEALING <u>AGAINST ALL DEFENDANTS</u>

121.    Plaintiff incorporates, by reference, the facts pleaded in the preceding paragraphs of this Third Amended Complaint.

122.    All Defendants – as described with particularity throughout this Third Amended Complaint – have repeatedly violated the duties of good faith and fair dealing that they owed, and still owe, to the Plaintiff. This is because, through their RICO Enterprise, the Defendants have all profited from their concerted violations of the Telemarketing Sales Rules, along with profiting from the other consumer frauds perpetuated against Vivian Grijalva, as described in this Third Amended Complaint.

123.    Specifically, Defendants, NLSS/Kevin Mason/Kevin Mason, P.A./GM Law Firm/Chantel Grant/Gregory Fishman/Julie Queler/Resolvly, and their agents, have committed willful breaches of the duty of good faith and fair dealing owed to Vivian Grijalva when they unlawfully, and dishonestly, solicited advanced-fees for the telemarketed "student loan debt resolution program", from Vivian Grijalva, as described, in this Third Amended Complaint.

124.    As a sole and proximate result of these wrongful acts on the part of all Defendants, respectively, Plaintiff demands a judgment against them, jointly and severally, for: all actual damages suffered as a result of Defendants' breaches of the duty of food faith and

fair dealing; a refund of all client-monies converted by the Defendants, with pre-and-post

judgment interest; all attorney's fees; costs of litigation; and punitive damages.

## VII.  PRAYER FOR RELIEF

The Plaintiff, Vivian Grijalva, requests that this Court enter a judgment against

Defendants and in favor of her, and award the following relief:

a.    that the conduct herein be declared, adjudged and decreed to be unlawful;

b.    award Plaintiff appropriate relief, including actual damages, statutory damages,

treble damages, punitive damages, and restitutionary disgorgement;

c.    award all costs of prosecuting the litigation, including expert fees;

d.    award pre-and-post-judgment interest;

e.    award attorneys' fees; and

f.    grant such additional relief as this Court may deem just and proper.

## VIII.  DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by

jury as to all claims in this action.

Dated: January 29, 2020                    Respectfully submitted,

**GAMEZ LAW FIRM, P.C.**
Daniel Gamez (222578)
Gamez Law Firm, PC
515 South Flower Street
Suite 3600
Los Angeles, CA 90071

-and-

**THE LAW OFFICE OF MACY D.
HANSON, PLLC**
*/s/ Macy D. Hanson*
Macy D. Hanson
Mississippi Bar No.: 104197
(*pro hac vice*)
The Echelon Center
102 First Choice Drive
Madison, Mississippi 39110

THIRD AMENDED COMPLAINT

Telephone: (601) 853-9521

## **CERTIFICATE OF SERVICE**

I am employed in the County of Madison, Mississippi; I am over the age of eighteen years and not a party to the within entitled action; my business address is 102 First Choice Drive, Madison, Mississippi 39110.  I am a registered user of the CM/ECF system for the United States District Court for the Central District of California.

On January 29, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.  To the best of my knowledge, all counsel to be served in this action are registered CM/ECF users and will be served by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 29, 2020, at Madison, Mississippi.


*/s/ Macy D. Hanson*
_____
MACY D. HANSON
(Admitted *Pro Hac Vice)*

THIRD AMENDED COMPLAINT